# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) CARTER FIELDS, an individual;<br>(2) HANNAH HIPPS, an individual, | ) ) ) | |
| Plaintiffs, | ) ) | |
| *v.* | ) ) | |
| (1) HENCH'S COUNTRY LIV'N HOMES<br>OF CALERA;<br>(2) JESSUP HOUSING;<br>(3) CROWN CONTRACTING, LLC;<br>(4) 21st MORTGAGE CORPORATION;<br>(5) AUSTIN RUPP, an individual,<br>(6) STEPHEN STUBBS, an individual; | ) ) ) ) ) ) ) ) | |
| Defendants, | ) | Case No. 6:23-cv-372-JAR |
| *and* | ) ) | |
| (1) CROWN CONTRACTING, LLC;<br>(2) 21st MORTGAGE CORPORATION, | ) ) ) | |
| Cross-Claimants, | ) ) | |
| *v.* | ) ) | |
| (1) STEPHEN STUBBS, an individual;<br>(2) HENCH'S COUNTRY LIV'N HOMES<br>OF CALERA, | ) ) ) ) | |
| Cross-Defendants. | ) ) | |

## <u>OPINION AND ORDER</u>

Before the Court is the motion to compel arbitration [Dkt. 35] filed on behalf of defendant Crown Contracting, LLC ("Crown"). Plaintiffs Carter Fields ("Fields") and Hannah Hipps ("Hipps") timely responded in opposition [Dkt. 41] and Crown submitted a reply brief [Dkt. 43].

## I.    BACKGROUND

Plaintiffs commenced this action on September 18, 2023 in the District Court of Bryan County, Oklahoma against defendants Hench's Country Liv'n Homes of Calera ("Hench's"), Jessup Housing, Crown, 21st Mortgage Corporation, and Austin Rupp, alleging defects in the mobile home plaintiffs purchased from Hench's on or about September 13, 2021. [Dkt. 2-3].[1] It is undisputed that plaintiffs contracted with Hench's for the purchase and delivery of a manufactured home, which was to be installed at plaintiffs' property in Bokchito, Oklahoma. *See* [Dkt. 41-2]. It is also undisputed that Hench's, in turn, retained Crown to perform the delivery and installation.

Before Crown agreed to deliver and install the home, it "required" Fields to sign a document titled "Arbitration Agreement." Fields executed the document on or about September 13, 2021. *See* [Dkt. 35-1]. On October 18, 2023, Crown filed notice in the District Court of Bryan County of its intent to enforce the arbitration agreement, and shortly thereafter, defendants removed the action to this Court pursuant to 28 U.S.C. § 1446(a). [Dkt. 2]. By express consent of all parties [Dkt. 48], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned U.S. Magistrate Judge exercises complete jurisdiction over this action through and including trial and the entry of a final judgment.

---

[1] Plaintiffs filed their operative complaint on March 4, 2024, adding Stephen Stubbs as a defendant to this action. *See generally* [Dkt. 56].

## II.   ANALYSIS

Crown moves the Court to compel arbitration of Fields' claims pursuant to Section 2 of the Federal Arbitration Act ("FAA"),[2] which provides:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The provision "reflect[s] both a 'liberal federal policy favoring arbitration,' and 'the fundamental principle that arbitration is a matter of contract.'" AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts." Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

The U.S. Supreme Court has long recognized that, although favored, arbitration is required only where the parties have *agreed* to submit the dispute to arbitration. *See e.g.*, First Options of Chi., Inc. v. Kaplan ("Kaplan"), 514 U.S. 938, 942 (1995). Courts should not assume the parties agreed to arbitrate unless there is "clear and unmistakable" evidence that they did so. Id. at 944 (citation omitted). This is because "arbitration is a matter of consent, not coercion," and the Court's power to

---

[2] Crown's motion is limited to the two claims for negligence and breach of the Oklahoma Consumer Protection Act as raised by Fields. *See* [Dkt. 56, ¶¶ 87-102]. Crown has not invoked the arbitration agreement against those two claims as raised by co-plaintiff Hipps. *See* [Dkt. 35 at 1].

compel arbitration is limited "'accord[ing to] the terms' of the parties' agreement." New Prime Inc. v. Oliveria, 586 U.S. 105, 106 (*citing* 9 U.S.C. § 2).

When deciding whether the parties agreed to arbitrate a certain matter, courts generally "should apply ordinary state-law principles that govern the formation of contracts." Kaplan, 514 U.S. at 944. Arbitration may be compelled only if (1) a valid agreement exists and (2) the dispute falls within the scope of that agreement. AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986); *see also* Johnson v. Convalescent Ctr. of Grady Cty., LLC, 2014 OK 102, ¶ 6, 341 P.3d 71, 43 ("A court asked to compel arbitration of a dispute must first determine whether the parties agreed to arbitrate that dispute.").

The arbitration agreement upon which Crown relies provides in its entirety:

> You, as the customer, have entered into an agreement with or otherwise solicited service or products from Crown Contracting LLC relating to or arising out of sales, installation, Transportation [sic], delivery and/or set up of a manufactured home. As part of that agreement and in order to induce Crown to provide such sales or services, You, as a Customer agreement [sic] all claims, disputes, causes of action, or demands that You have or may have against Crown, its officers, agents, employees, affiliates, contractors, against [sic], or insurers arising in any way out of your agreement with Crown or the provision of services or sale of products shall be submitted to final and binding arbitration in accordance with the Commercial Rules of American Arbitration Association and that the venue for any arbitration shall be Van Zandt County, Texas.

[Dkt. 35-1]. The Court examines this agreement under general principles of Oklahoma contract law.[3]

---

[3] Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," 15 Okla. Stat. ("O.S.") § 154, and "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." 15 O.S. § 155. "[W]here the language is ambiguous, it will be interpreted in

## A. VALIDITY OF THE ARBITRATION AGREEMENT

While conceding that Fields signed Crown's arbitration form, plaintiffs argue that the agreement is invalid and unenforceable on multiple grounds.

### 1. Consideration and Mutuality

First, plaintiffs assert the arbitration form is unenforceable because it lacks consideration and mutuality. [Dkt. 41 at 4-8]. Oklahoma law makes clear that consideration is an essential element of a contract. 15 O.S. § 2; Thompson v. Bar-S Foods Co., 2007 OK 75, ¶ 19, 174 P.3d 567, 574 ("Neither oral nor written contracts are enforceable without consideration."). Under Oklahoma law, consideration exists as long as there is a benefit to the promisor or a detriment to the promisee, but does not exist where a party promises only what it is already legally bound to do. *See* id.; 15 O.S. § 106 (defining "good consideration").

By its express terms, the agreement signed by Fields purports to require arbitration in connection with a separate "agreement with" Crown or from the solicitation of "service or products" from Crown. Plaintiffs argue (correctly) that no such separate agreement exists, and that Fields did not "solicit" services from Crown. [Dkt. 41 at 6, 9 fn.3]. Instead, Hench's retained Crown to fulfill Hench's pre-existing duty under the retail sales contract to deliver and install plaintiffs' home. [*Id*. at 6]. Because plaintiffs had already paid Hench's for delivery, Crown conferred no new benefit in exchange for Fields' waiver of judicial recourse; its only role was as Hench's

---

a fair and reasonable sense." Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc., 2007 OK 12, ¶ 27, 160 P.3d 936, 944. "[C]ourts will read the contract language in its plain and ordinary meaning unless a technical meaning is conveyed." Id.

subcontractor. On these facts, the arbitration form is nothing more than a unilateral promise by Fields, unsupported by consideration or mutuality. *See* Watson v. Am. Creosote Works, 1938 OK 578, 84 P.2d 431, 433-34 (holding that a promise to perform an existing duty owed to a third-party lacks consideration); *see also* Home Owners' Loan Corp. v. Thornburgh, 1940 OK 424, ¶ 4, 106 P.2d 511, 512 (identifying as "too well settled to justify extended discussion" the principle that "performance or promise of performance … of a duty which one is already legally bound to do, forbear or suffer, is not sufficient consideration to support a contract").

Crown responsively contends that Oklahoma law presumes a written instrument is supported by consideration, and insists plaintiffs have not met their burden of showing otherwise. [Dkt. 43 at 2 (*citing* 15 O.S. §§ 114-15)]. It further maintains that the arbitration form must be read together with the retail purchase agreement and delivery paperwork as a single contract. [*Id.* at 3-4 (*quoting* Strickland v. Am. Bakery & Confectionary Workers Union & Indus. Nat. Welfare Fund, 1974 OK 111, ¶ 12, 527 P.2d 10, 13) ("[W]here two written instruments refer to the same subject matter and on their face show that each was executed as a means of carrying out the intent of the other, both should be construed as one contract.")]. On Crown's view, its delivery and installation services constitute the consideration for Fields' promise to arbitrate.

This argument overlooks two critical limitations in Oklahoma law. First the rule permitting instruments to be read together applies only where they are executed "by the same parties." Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 11, 143

P.2d 154, 157. That is not the case here: the retail purchase contract bound Hench's and both plaintiffs, while the arbitration form was signed solely by Fields and Crown. Second, the rule requires that the instruments be executed as "parts of one transaction," not as sequential or independent dealings. F.D.I.C. v. Hennessee, 966 F.2d 534, 537 (10th Cir. 1992) (*citing* Mid-Am. Corp. v. Miller, 1962 OK 123, ¶ 15, 372 P.2d 14, 17). Plaintiffs' transaction was with Hench's for purchase and delivery of a manufactured home. Hench's decision to subcontract Crown was a separate arrangement. The arbitration form, presented separately as a condition of delivery, was not contemplated in plaintiffs' original bargain. *See* [Dkt. 41-2].

Because the arbitration form fails both the "same parties" and "same transaction" requirements, Oklahoma law forbids integrating it with the purchase agreement. The form must be analyzed on its own terms. Standing alone, it is a unilateral waiver, extracted as a condition of delivery, unsupported by new consideration, and therefore unenforceable. *See* Langdon v. Saga Corp., 1976 OK CIV APP 65, ¶ 7, 569 P.2d 524, 527; Crosbie v. Brewer, 1916 OK 368, 158 P. 388, 389.

### 2. Consent and Adhesion

Beyond consideration, plaintiffs contend the arbitration form was imposed under circumstances negating meaningful consent. [Dkt. 41 at 8-9]. They emphasize that Crown refused to deliver and install the home unless Fields signed,[4] thereby holding performance hostage even though Hench's was already contractually

---

[4] Crown expressly acknowledges that it "was hired by Hench's to deliver and install" plaintiffs' mobile home and that it "required Fields to enter into an Arbitration Agreement before" undertaking that work. [Dkt. 35 at 2].

obligated to perform those tasks. [*Id.* at 8]. Plaintiffs characterize this as economic duress, arguing that they had no reasonable alternative but to acquiesce in order to receive the home they had already purchased. [*Id.* at 9]. Oklahoma law allows a party to avoid a contract it has entered if a "'wrongful act [of the other party was] sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" Strickland Tower Maint. v. AT&T Commuc'ns, 128 F.3d 1422, 1426 (10th Cir. 1997) (*quoting* Centric Corp. v. Morrison-Knudsen Co., 1986 OK 83, ¶ 12, 731 P.2d 411, 416).

Crown, by contrast, portrays the agreement as a straightforward condition of its subcontracted performance. [Dkt. 35 at 4-5]. It emphasizes federal policy favoring arbitration and the presumption that written agreements are enforceable unless proven invalid. [*Id.* at 3; Dkt. 43 at 4].

The record nevertheless shows that the agreement at issue bears the hallmarks of adhesion. Plaintiffs had already negotiated and paid in full for delivery through their retail contract with Hench's. The arbitration form was presented when plaintiffs were entirely dependent on Crown to complete the installation. In practical effect, Crown conditioned performance of an existing obligation—delivery already purchased and owed—on Fields' surrender of his right to judicial recourse. Oklahoma law has recognized that agreements imposed under such circumstances may be unenforceable as illusory or unconscionable. *See* Grp. One Realty, Inc. v. Dahr Props.-Mem'l Springs, LLC, 2017 OK CIV APP 54, ¶ 8, 404 P.3d 905, 908.

## B.  APPLICABILITY OF THE FEDERAL ARBITRATION ACT

Plaintiffs further argue the FAA is inapplicable because the arbitration form is not "in" a contract evidencing commerce. [Dkt. 41 at 10-11]. As noted, the FAA enforces a written arbitration provision "in" a contract "evidencing a transaction involving commerce," *or* a separate written agreement to arbitrate an "existing controversy" arising from such a contract. 9 U.S.C. § 2. Plaintiffs assert that the only contract evidencing commerce is the retail sales contract with Hench's (which contains no arbitration clause), and maintain that the stand-alone arbitration form cannot bring the dispute within the FAA. [*Id.* at 10]. Their argument is limited to the former requirement under Section 2 of the FAA, as Crown did not invoke the latter in its motion to compel. [*Id.* (*citing* Dkt. 35 at 4-5)].

Crown appears to invoke the latter requirement in its reply brief, however, asserting the FAA covers agreements "in writing" to submit to arbitration an existing controversy arising out of a transaction, not just clauses embedded in contracts. [Dkt. 43 at 3-4]. It also stresses that plaintiffs are Oklahoma residents and Crown is a Texas company, making the transaction interstate in nature. [*Id.* at 5 (*citing* Comanche Indian Tribe of Okla. v. 48, LLC, 391 F.3d 1129, 1132 (10th Cir. 2004))].

It is true that "involving commerce" is construed broadly,[5] and that the FAA would reach a valid written agreement between these parties. But the FAA does not rescue contracts that fail under state law. *See* Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). As the U.S. Supreme Court has explained, the FAA's policy "is

---

[5] *See* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States or with foreign nations"); *see also* Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74 (1995).

about treating arbitration contracts like all others, not about fostering arbitration." Morgan v. Sundance, 596 U.S. 411, 418 (2022). Because the arbitration agreement at issue lacks consideration and mutuality under Oklahoma law, the FAA cannot make it enforceable.

### C. ADDITIONAL PRACTICAL CONSIDERATIONS

Even if the arbitration agreement were otherwise enforceable, compelling arbitration would splinter litigation in the present action. Plaintiff Hipps, a co-purchaser, did not sign the arbitration form and is not bound. Arbitration of Fields' claims alone would generate piecemeal proceedings with overlapping facts in two fora. While the FAA tolerates parallel proceedings when required, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985), it does not require courts to create fragmentation absent a clear and valid agreement. Here, the absence of a binding arbitration agreement with Fields, coupled with the lack of any agreement with Hipps, counsels against severing claims into arbitration.

Plaintiffs also point out that Crown has filed multiple substantive motions in this case, thereby invoking the litigation machinery. [Dkt. 41 at 8-9]. The Tenth Circuit has recognized that such conduct may be inconsistent with a claimed right to arbitrate. *See e.g.*, Hill v. Ricoh Ams. Corp., 603 F.3d 766, 772 (10th Cir. 2010).

### III. CONCLUSION

The arbitration agreement is best read as a unilateral waiver by Fields, unsupported by new consideration and extracted as a condition to receive performance already owed under a separate contract. Plaintiffs' arguments highlight

defects in consideration, mutuality, and consent; Crown's reliance on statutory presumptions and contemporaneous documents does not cure those defects. The FAA does not compel arbitration of a contract unenforceable under Oklahoma law.

WHEREFORE, the Motion to Compel Arbitration [Doc. 35] filed on behalf of defendant Crown Contracting, LLC is hereby **DENIED**.

IT IS SO ORDERED on this 11th day of September, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE