# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CARTER FIELDS, an individual; )<br>(2) HANNAH HIPPS, an individual, )<br>)<br>                      Plaintiffs, )<br>*v.* )<br>)<br>(1) HENCH'S COUNTRY LIV'N HOMES )<br>OF CALERA; )<br>(2) JESSUP HOUSING; )<br>(3) CROWN CONTRACTING, LLC; )<br>(4) 21st MORTGAGE CORPORATION; )<br>(5) AUSTIN RUPP, an individual, )<br>(6) STEPHEN STUBBS, an individual; )<br>)<br>                      Defendants, )<br>*and* )<br>)<br>(1) CROWN CONTRACTING, LLC; )<br>(2) 21st MORTGAGE CORPORATION, )<br>)<br>                Cross-Claimants, )<br>*v.* )<br>)<br>(1) STEPHEN STUBBS, an individual; )<br>(2) HENCH'S COUNTRY LIV'N HOMES )<br>OF CALERA, )<br>)<br>                Cross-Defendants. ) | Case No. 6:23-cv-372-JAR |

## **OPINION AND ORDER**

Before the Court is the Motion to Dismiss Plaintiffs' Fourth, Fifth, and Sixth Causes of Action and Part of Their Third Cause of Action [Doc. 156] filed on behalf of defendant Jessup Housing ("Jessup") pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs Carter Fields ("Fields") and Hannah Hipps ("Hipps") timely responded in opposition [Dkt. 157] and Jessup submitted a reply brief [Dkt. 159].

1

## I. PLAINTIFFS' ALLEGATIONS

On September 17, 2021, plaintiffs entered a written contract with defendant Hench's Country Liv'n Homes of Calera ("Hench's") for the purchase of a new three-bedroom mobile home manufactured by defendant Jessup. Defendant Austin Rupp ("Rupp"), a salesperson for Hench's, facilitated the transaction. The purchase price of the home was $78,041.65. Plaintiffs made a $10,000 cash down payment on or about September 13, 2021, which was to be credited toward the purchase price, leaving an unpaid balance was $68,041.65. Hench's referred plaintiffs to defendant 21st Mortgage Corporations ("21st Mortgage") to finance the remaining balance. [Dkt. 56, ¶¶ 9-15]. In addition, Plaintiffs spent approximately $7,000 on improvements related to the mobile home. [*Id.*, ¶ 22 ("*e.g.*, fencing, custom porch")].

Under the purchase agreement, Hench's was obligated to deliver the mobile home to plaintiffs' address in Bokchito, Oklahoma, and to block, level, and tie it down in accordance with state code. Hench's further issued plaintiffs a "Home Warranty Information Sheet" confirming that the home was covered by a one-year warranty, that cosmetic items would be corrected at "trim-out," and that any additional issues would be handled during the warranty period. The initial trim-out promised by Hench's never occurred, according to plaintiffs, resulting in cosmetic damage upon delivery. [*Id.*, ¶¶ 18-21].

Hench's engaged defendant Crown Contracting, LLC ("Crown") to perform delivery and installation of plaintiffs' mobile home, and Crown in turn subcontracted with defendant Stephen Stubbs ("Stubbs") to deliver the home. [*Id.*, ¶¶ 23-24, 27].

Stubbs delivered the home to plaintiffs' property on or about September 14, 2021. Upon delivery, plaintiffs observed the floors appeared "lumpy and uneven" and promptly contacted Rupp, who advised that such appearance was normal prior to the home being "set." After Crown completed the setting of the home on or about September 24, 2021, plaintiffs observed that the floors became "sagging and ill-supported." They also noticed gaps between the home and its supporting blocks but were told by Hench's and Crown representatives that the home required time to "settle." [*Id*., ¶¶ 28-33].

Plaintiffs later discovered additional defects with the home, including water intrusion at the windows, behind the shower, and around the kitchen vent hood; inadequate insulation; recurring electrical problems; faulty wiring; inconsistent water pressure; malfunctioning smoke alarms; and other indicators of poor manufacturing and/or improper delivery and installation. [*Id*., ¶¶ 37, 44]. Consistent with the purchase agreement and express warranty terms, plaintiffs promptly notified Hench's of these concerns, but Hench's ultimately failed to remedy them in a timely manner. Plaintiffs then contacted 21st Mortgage and Jessup seeking resolution. [*Id*., ¶¶ 38-40]. Jessup dispatched inspectors in October 2022, who reported that plaintiffs' home was not level or set properly, that the water lines were pinched, and that both the roof and floors required replacement. The inspectors purportedly concluded the home was "unrepairable" and "should never [have] left [the] factory." [*Id.,* ¶ 48].

## II.  PROCEDURAL HISTORY

Plaintiffs commenced this action in the District Court of Bryan County, Oklahoma against defendants Hench's, Jessup, Crown, 21st Mortgage, and Rupp, alleging defects in the mobile home. [Dkt. 2-3]. Plaintiffs filed their first amended complaint on March 4, 2024, adding defendant Stubbs to this action and asserting the following challenged claims against Jessup: breach of warranty (Count III); negligence (Count IV); violations of the Oklahoma Consumer Protection Act (Count V); and unjust enrichment (Count VI). [Dkt. 56]. This action was removed to this Court by Jessup in October 2023, pursuant to 28 U.S.C. § 1446(a). [Dkt. 2]. By express consent of all parties [Dkt. 48], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned U.S. Magistrate Judge exercises complete jurisdiction over this action through and including trial and the entry of a final judgment.

## III.  DISMISSAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations omitted).

## IV.   ANALYSIS

### A.   APPLICABILITY OF THE ECONOMIC LOSS DOCTRINE

Plaintiffs allege in Count IV that Jessup breached its duty of reasonable care in the design and manufacturing of their mobile home. [Dkt. 56, ¶¶ 87-90]. In Count VI, plaintiffs claim Jessup was unjustly enriched in excess of $75,000 by "undertaking the actions described herein." [*Id.*, ¶¶ 103-106]. Jessup moves to dismiss these tort claims under the economic loss rule. [Doc. 156, ¶ 9].

Oklahoma recognizes the economic loss rule only in the context of manufacturers' products liability, barring recovery solely for injury to the product resulting in economic loss. Waggoner v. Town & Country Mobile Homes, Inc., 1990 OK 139, ¶ 22, 808 P.2d 649, 653. The Oklahoma Supreme Court has never applied the economic loss rule outside of the products liability context. *See e.g.*, Mills v. J-M Mfg. Co., Inc., 2025 OK 23, ¶ 15, 567 P.3d 385, 389 n.5 (expressly declining to extend the economic loss rule beyond products liability). Federal courts applying Oklahoma law have consistently recognized the state's restrictive approach to the economic loss rule. *See e.g.*, Compsource Okla. v. BNY Mellon, N.A., No. 08-CIV-469, 2009 WL 2366112 at *2 (E.D. Okla. July 31, 2009) (declining to extend application of economic loss rule because Oklahoma courts have only applied the doctrine to products liability). Because plaintiffs do not assert a claim for manufacturers' products liability, the economic loss rule does not apply to their tort claims. Jessup's request for dismissal of Counts IV and VI on this basis is therefore denied.

### B.  THE OKLAHOMA CONSUMER PROTECTION ACT

In Count V, plaintiffs allege Jessup violated the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. §§ 751 *et seq.*, by breaching implied warranties "as described herein," refusing to accept responsibility for damage to the mobile home, and failing to identify and notify plaintiffs of such damage prior to their receipt and possession of the same. [Dkt. 56, ¶¶ 99(v), (viii)-(ix)]. To prevail on a private right of action under the OCPA, a consumer must prove: (1) the defendant engaged in an unlawful practice as defined in 15 O.S. § 753; (2) the challenged practice occurred in the course of the defendant's business; (3) the plaintiff, as a consumer, suffered an injury in fact; and (4) the challenged practice caused the plaintiff's injury. Patterson v. Beall, 2000 OK 92, ¶ 30, 19 P.3d 839, 846. Jessup contends it is exempt from plaintiffs' OCPA claim pursuant to 15 O.S. § 754(2). [Dkt. 156, ¶ 23].

### 1.  Purported Unlawful Practices

The threshold question is which provisions of § 753 plaintiffs' allegations implicate. In their response brief, plaintiffs claim Jessup engaged in the following unlawful business practices:

> [9] Advertising, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;

> [12] Makes false or misleading statements of fact, knowingly or with reason to know, concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction;

> [13] Employs 'bait and switch' advertising, which consists of an offer to sell the subject of a consumer transaction which the seller does not intend to sell, which advertising is accompanied by … [g] willful failure to make deliveries of the subject of a consumer transaction within a reasonable time to make a refund therefor upon the request of the purchaser[;]

> [21] Commits an unfair or deceptive trade practice as defined in Section 752 of this title[.]

15 O.S. §§ 753(9), (12), (13)(g), (21).[1] According to plaintiffs, Jessup engaged in these unlawful practices through "false and misleading presentation and performance of written warranties" applicable to the mobile home. [Dkt. 157 at 13]. The first amended complaint, however, contains no factual allegations of false advertising, price misrepresentations, or bait-and-switch tactics. The complaint also pleads no "written" warranty by Jessup; it alleges only implied warranties. *See* [Dkt. 56, ¶¶ 81, 84, 99(v), 109, 111]. It is well settled that allegations first raised in briefing cannot amend a deficient pleading. *See* Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995).

What remains are plaintiffs' theories of implied warranty breach, failure to resolve responsibility for damage to the mobile home, and failure to identify and disclose such damage. [*Id.*, ¶¶ 99(v), (viii)-(ix)]. These theories sound in warranty enforcement and contract administration, not deception or unfairness under § 752. Consequently, as plaintiffs have not sufficiently pleaded facts demonstrating Jessup engaged in an "unlawful practice" as defined by § 753, their OCPA claim fails.

### 2. Regulated-Transactions Exemption

Having determined the first amended complaint fails to state an OCPA claim against Jessup, the Court applies § 754(2) to assess futility of amendment. This section explicitly excludes from the OCPA's purview "actions or transactions"

---

[1] The OCPA defines deceptive trade practice as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." 15 O.S. § 752(13). Unfair trade practice is defined as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Id.

regulated under the statutory authority of Oklahoma or the United States. 15 O.S. § 754(2). Courts interpreting § 754(2) have found the exemption applicable where the conduct underlying the alleged OCPA violation is subject to regulation by a state or federal regulatory body. *See* Rogers v. QuikTrip Corp., 2010 OK 3, ¶ 17, 230 P.3d 853, 858 n.40; Dennis v. Good Deal Charlie, Inc., No. 20-CV-295-GKF-JFJ, 2022 WL 3577244 at *1 (N.D. Okla Aug. 19, 2022) (collecting cases).

Jessup asserts that plaintiffs' OCPA claim is exempt under § 754(2) due to its licensure by the Oklahoma Used Motor Vehicle, Dismantler, and Manufactured Housing Commission ("Commission") and the comprehensive regulation of its challenged conduct by the U.S. Department of Housing and Urban Development's ("HUD") Manufactured Home Construction and Safety Standards Act. [Dkt. 156, ¶¶ 23-76, 84-85; Dkt. 159 at 6-8]. Jessup emphasizes the Commission's regulatory authority over manufacturers' operations, licensing, and fees, OKLA. ADMIN. CODE §§ 765:36-3-1—765:36-7-2, alongside HUD's extensive standards governing manufactured-home design, construction, labeling, and installation. 42 U.S.C. §§ 5401-5426; 24 C.F.R. §§ 3280-86, 3800. This regulatory framework, as Jessup argues, encompasses the core activities contested by plaintiffs.

Plaintiffs concede the existence of regulations governing design and construction but attempt to confine their OCPA claim to Jessup's "offering, presentation, and performance of written warranties," arguing these are not regulated under § 754(2). [Dkt. 157 at 12-13]. However, the Court observes that the essence of Count V, as pleaded, concerns alleged misrepresentations about the

8

condition of the manufactured home and responsibility for repairs. *See* Jojola, 55 F.3d at 494 (allegations first raised in briefing cannot amend a deficient pleading). Furthermore, plaintiffs' theory misconstrues the nature of a warranty, which, as defined by the Magnuson-Moss Warranty Act, directly relates to the specifications and condition of the manufactured home's design and construction. *See* 15 U.S.C. § 2301(6)(B). To characterize defect-remediation representations as unregulated would be to prioritize form over substance, potentially undermining the safe harbor provided by § 754(2). Plaintiffs further argue for a narrow interpretation of § 754(2), suggesting it should not provide blanket immunity without an equivalent private damages remedy in the regulated scheme. [*Id*. at 13]. However, this argument is not supported by the text of § 754(2), and Oklahoma jurisprudence focuses on whether the actions or transactions are regulated, rather than on the parity of remedies. *See e.g.,* Robinson v. Sunshine Homes, Inc., 2012 OK CIV APP 87, 291 P.3d 628.

The Court finds that plaintiffs have not identified any discrete, pled category of Jessup's conduct that falls outside the regulated domain. Plaintiffs' shift in focus on "offering, presentation, and performance of written warranties" appears belatedly in their briefing and, in any event, pertains to remedial obligations for regulated defects. Upon thorough consideration, the Court concludes the actions or transactions complained of against Jessup are indeed within a pervasively regulated domain. This triggers the exemption under § 754(2) of the OCPA, entitling Jessup to dismissal of Count V on this basis.

### C. IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

In Count III of the first amended complaint, plaintiffs assert that Jessup breached implied warranties of habitability, merchantability, and fitness for a particular purpose by delivering a manufactured home with unsafe nonconformities. [Dkt. 56, ¶ 84]. Jessup moves for partial dismissal of Count III, contending plaintiffs have failed to state a claim. [Dkt. 156, ¶¶ 95-97].

The Oklahoma Supreme Court definitively established in <u>Osburn v. Bendix Home Sys., Inc.</u>, 1980 OK 86, 613 P.2d 445, that manufactured homes constitute "goods" governed by Article 2 of the Uniform Commercial Code ("UCC"). <u>Id</u>. at ¶ 5. This foundational precedent subjects manufactured home sales to the full range of UCC warranties, including the implied warranty of fitness for a particular purpose under the Oklahoma statute adopting UCC § 2-315. This statute provides that an implied warranty of fitness arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required" and "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." <u>12 O.S. § 2-315</u>. Federal courts applying Oklahoma law have established that a plaintiff must demonstrate two essential elements: (1) the seller knew the goods would be used for a particular purpose and (2) the buyer relied on the seller's skill or judgment in selecting suitable goods. *See* <u>Crysco Oilfield Servs., Inc. v. Hutchinson-Hayes Intern., Inc.</u> ("<u>Crysco</u>"), 913 F.2d 850, 852 (10th Cir. 1990). The distinction between "ordinary" and "particular" purpose is articulated in comment 2 to § 2-315:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is

10

> peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisages in the concept of merchantability and go to uses which are customarily made of the goods in question.

The classic illustration involves shoes: while shoes ordinarily serve for "walking upon ordinary ground," a seller's knowledge that the shoes were selected for "climbing mountains" creates a particular purpose. 12 O.S. § 2-315 cmt. 2.

As to the first element, Jessup contends that plaintiffs have not alleged use of the manufactured home for a purpose different from its ordinary use. [Dkt. 156, ¶ 96]. The pleadings reflect that plaintiffs purchased a home manufactured by Jessup to serve as their residence, constituting an ordinary and foreseeable use for which the home was manufactured. Courts applying § 2-315 have consistently held that use of goods for their ordinary, intended function does not constitute a "particular purpose." *See* Crysco, 913 F.2d at 852 ("We hold that the use of a good in the ordinary manner for which the good was manufactured does not satisfy section 2-315's requirement that the good be used for a 'particular purpose.'"); *see also* Jackson v. Glasgow, 1980 OK CIV APP 65, ¶ 10, 622 P.2d 1088, 1090 (petition alleging use of manufactured home as residence failed to state a claim under § 2-315 absent facts showing seller's knowledge of a particular purpose or buyer's reliance).

Plaintiffs argue that a manufactured home may be used for multiple potential purposes—*e.g.*, office space, classrooms, or storage facilities—and thus their residential use is not necessarily an "ordinary" purpose. [Dkt. 157 at 21]. However, the mere fact that a product is capable of multiple uses does not transform every routine use into a "particular purpose." *See* Weir v. Fed. Ins. Co., 811 F.2d 1387, 1393

11

(10th Cir. 1987) (distinguishing between ordinary and particular purposes and rejecting a § 2-315 claim where clothes dryer was used for the ordinary purpose of drying clothes). In an effort to salvage their § 2-315 claim, plaintiffs allege Hench's knew (i) they intended to start a family in connection with the home purchase and (ii) they planned to place the home on a pre-existing dirt pad on their property. [*Id.*]. These facts, even if true, describe circumstances surrounding plaintiffs' residential use but do not transform that use into a "particular purpose" within the meaning of § 2-315. Plaintiffs still used the manufactured home for its ordinary and intended function, rather than for any specialized or unusual purpose.

Even if plaintiffs could sufficiently allege a qualifying "particular purpose," they must also plead facts showing that Jessup knew of that purpose and that plaintiffs relied on Jessup's skill or judgment in selecting the home. 12 O.S. § 2-315; Collins v. Radio Co. of Dallas v. Bell, 1980 OK CIV APP 57, 623 P.2d 1039, 1054. The first amended complaint contains no such allegations. There are no well-pleaded facts establishing that Jessup was apprised of any unique needs of plaintiffs, or that plaintiffs deferred to Jessup's expertise in choosing a particular model. Without allegations of seller knowledge and buyer reliance, plaintiffs fail to satisfy the second element of § 2-315. Jessup is entitled to Rule 12(b)(6) dismissal of plaintiffs' claim for breach of implied warranty of fitness for a particular purpose under Count III.

### D. LEAVE TO AMEND

In their response, plaintiffs include conditional requests for leave to amend their claims against Jessup for breach of warranties (Count III), negligence (Count

IV), violations of the OCPA (Count V), and unjust enrichment (Count VII). [Dkt. 10, 11, 22]. Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, a court may deny amendment upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendment, or futility of the amendment. *See* Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). Amendment is futile when the amended pleadings would still be subject to dismissal under Rule 12(b)(6). Johnson v. Metro. Prop. & Cas. Ins. Co., 97 F.4th 1223, 1232 (10th Cir. 2024). Jessup opposes amendment, arguing that any modification to the first amended complaint would be futile because plaintiffs cannot, as a matter of law, cure the deficiencies identified in its motion to dismiss. [Dkt. 156, ¶¶ 5-6].

### 1.  Count III | Breach of Warranties

As discussed, plaintiffs' claim for breach of implied warranty of fitness for a particular purpose fails because they allege only ordinary residential use, not a "particular purpose" within the meaning of 12 O.S. § 2-315, and do not allege seller knowledge or reliance on seller's judgment. Plaintiffs concede the first amended complaint does not recite these statutory elements and request leave to amend to explicitly allege such facts. [Dkt. 157 at 11]. Even assuming plaintiffs could sufficiently allege seller knowledge and reliance, amendment would remain futile where the alleged purpose (*i.e.*, use as a residence) constitutes the ordinary purpose for which plaintiffs' home was manufactured. *See* Crysco, 913 F.3d at 852.

Consequently, plaintiffs' request for leave to amend their claim against Jessup for breach of implied warranty of fitness for a particular use is denied as futile.

### 2.   Counts IV and VI | Negligence and Unjust Enrichment

Plaintiffs seek leave to amend Counts IV and VI only "to the extent" clarification is required to allege damages to "other property." [*Id.* at 10]. The present record does not indicate that such claims are facially deficient. However, plaintiffs may clarify their allegations of damages to "other property" if they believe such clarification is necessary to preserve their tort claims. Plaintiffs may request leave to amend Counts IV and VI in accordance with the Court's directive in § IV(D)(4), *infra*.

### 3.   Count V | Violations of the OCPA

Plaintiffs seek leave to amend Count V based on additional evidence that they contend would support allegations of unlawful business practices under the OCPA. [*Id.* at 22]. Even accepting plaintiffs' proffer as true, any amendment directed at Jessup would fall within the regulated-transactions exemption in 15 O.S. § 754(2). Because this statutory safe harbor precludes OCPA liability as a matter of law, further amendment would be futile. Leave to amend Count V as to Jessup is denied.

### 4.   LCvR 7.1(k)

Finally, plaintiffs assert they have discovered evidence that may further support their claims for fraud and deceit against Hench's, Rupp, and 21st Mortgage (Count I), violations of the OCPA against Hench's, Rupp, Crown, Stubbs, and 21st Mortgage (Count V), and violations of the Magnuson Moss Act against Hench's, Jessup, and 21st Mortgage (Count VII). [*Id.*]. The Court grants plaintiffs fourteen (14)

14

days from the date of this Order, or until **OCTOBER 2, 2025**, to file a motion for leave to file a second amended complaint in accordance with LCvR 7.1(k).

## V. CONCLUSION

WHEREFORE, the Motion to Dismiss Plaintiffs' Fourth, Fifth, and Sixth Causes of Action and Part of Their Third Cause of Action [Doc. 156] filed on behalf of defendant Jessup Housing is hereby **GRANTED IN PART** and **DENIED IN PART**. Following entry of this Order, the status of each challenged claim asserted in the first amended complaint is as follows:

- Count III, insofar as it alleges breach of implied warranty of fitness for a particular purpose against Jessup, is dismissed for failure to state a claim;
- Count IV alleging negligence against Jessup remains pending;
- Count V alleging violations of the OCPA against Jessup is dismissed for failure to state a claim; and
- Count VI alleging unjust enrichment against Jessup remains pending.

**IT IS SO ORDERED** on this 18th day of September, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE