# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CARTER FIELDS, an individual; <br> (2) HANNAH HIPPS, an individual, <br><br>                                    Plaintiffs, <br><br> v. <br><br> (1) HENCH'S COUNTRY LIV'N HOMES <br> OF CALERA; <br> (2) JESSUP HOUSING; <br> (3) CROWN CONTRACTING, LLC; <br> (4) 21st MORTGAGE CORPORATION; <br> (5) AUSTIN RUPP, an individual; <br> (6) STEPHEN STUBBS, an individual, <br><br>                                Defendants, <br><br> *and* <br><br> (1) CROWN CONTRACTING, LLC; <br> (2) 21st MORTGAGE CORPORATION, <br><br>                          Cross-Claimants, <br><br> v. <br><br> (1) STEPHEN STUBBS, an individual; <br> (2) HENCH'S COUNTRY LIV'N HOMES <br> OF CALERA, <br><br>                         Cross-Defendants. | Case No. 6:23-cv-372-JAR |

## OPINION AND ORDER

Before the Court is the motion for judgment on the pleadings filed by defendants Hench's Country Liv'n Homes of Calera ("Hench's") and Austin Rupp ("Rupp") pursuant to Fed. R. Civ. P. 12(c). [Dkt. 198]. Plaintiffs timely responded in opposition [Dkt. 201], and defendants submitted a reply brief [Dkt. 211].

1

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (*quoting* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that that defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). When applying this standard, courts must accept as true well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief. *See id*. at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id*. at 678-79.

## I.     BACKGROUND

1.     Plaintiffs initiated this action on September 18, 2023 in the District Court of Bryan County, Oklahoma against defendants Hench's, Rupp, Jessup Manufactured Housing LLC ("Jessup"), Crown Contracting LLC ("Crown"), and 21st Mortgage Corporation ("21st Mortgage"), alleging defects in the mobile home purchased from Hench's, manufactured by Jessup, installed by Crown, and financed by 21st Mortgage. [Dkt. 2-3].[1]

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

2. On October 27, 2023, defendants removed the action to this Court pursuant to 28 U.S.C. § 1331 [Dkt. 2]. By express consent of all parties [Dkt. 48], and in accordance with Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises complete jurisdiction over this matter through and including trial and entry of a final judgment.

3. Plaintiffs filed a First Amended Complaint ("Amended Complaint") on March 4, 2024, adding defendant Stephen Stubbs ("Stubbs") and asserting seven causes of action: fraud and deceit against Hench's, Rupp, and 21st Mortgage (Count I); breach of contract against Hench's, Rupp, and 21st Mortgage (Count II); breach of warranty against Hench's, Jessup, and 21st Mortgage (Count III); negligence against Hench's, Jessup, Crown, Stubbs, and 21st Mortgage (Count IV); violations of the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. § 751 *et seq.*, against Hench's, Rupp, Jessup, Crown, Stubbs, and 21st Mortgage (Count V); unjust enrichment against Hench's, Rupp, Jessup, and 21st Mortgage (Count VI);[2] and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, against Hench's, Jessup, and 21st Mortgage (Count VII). [Dkt. 56, ¶¶ 62-113].

4. On January 6, 2025, Jessup moved to dismiss Counts IV, V, VI and part of Count III. [Dkt. 156]. By Order entered September 18, 2025, the Court granted that motion in part, dismissing Count V as well as Count III insofar as it alleged breach of implied warranty of fitness for a particular purpose against Jessup. [Dkt.

---

[2] On March 24, 2025, the Court granted plaintiffs' request to voluntarily dismiss Count VI as to defendant 21st Mortgage. [Dkt. 166].

196]. The Court further permitted plaintiffs to seek leave to file a Second Amended Complaint, subject to specified limitations. [*Id*. at 14-15].

5. Hench's and Rupp filed the motion at issue on September 30, 2025, seeking judgment on the pleadings as to Counts III, IV, V, VI, and VII. [Dkt. 198].

6. Plaintiffs filed a motion seeking leave to amend on October 2, 2025, and attached a proposed Second Amended Complaint thereto. [Dkt. 199]. By Order entered January 5, 2026, the Court denied leave to amend based on, *inter alia*, plaintiffs' failure to comply with the limitations set forth in its prior Order. [Dkt. 217].

## II.  ANALYSIS

Defendants Hench's and Rupp seek Rule 12(c) dismissal of plaintiffs' claims for breach of warranty (Count III), negligence (Count IV), violation of the OCPA (Count V), unjust enrichment (Count VI), and violation of the Magnuson-Moss Warranty Act (Count VII). The Court addresses the challenged counts in the sequence adopted in plaintiffs' response; however, because the viability of the Magnuson-Moss claim in Count VII depends in part on whether plaintiffs have adequately stated claims for breach of warranty in Count III, the Court begins with plaintiffs' warranty theories.

### A.  VIOLATIONS OF THE OCPA | COUNT V

"The OCPA was enacted to protect consumers from unfair and deceptive trade practices and," to that end, "provides a private right of action for aggrieved consumers." *Williams v. CSC Credit Servs., Inc.*, No. CIV-07-255-CVE-FHM, 2007 WL 1959219 at *1 (N.D. Okla. June 29, 2007) (*citing Patterson v. Beall*, 2000 OK 92, ¶ 30, 19 P.3d 839, 846). To state a claim under the OCPA, a plaintiff must show:

4

(1) that the defendant engaged in an unlawful practice as defined by 15 O.S. § 753; (2) that the challenged practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

*Patterson*, ¶ 30, 19 P.3d at 846. Here, Hench's and Rupp challenge the viability of Count V based on a purported failure to plead facts establishing an "unlawful practice" under § 753, and the regulated-transactions exemption under § 754.

### 1. Purported Unlawful Practices

The threshold question is which of § 753's thirty-two provisions plaintiffs' allegations implicate. The Amended Complaint alleges that Hench's and Rupp violated the OCPA by engaging in "unfair and deceptive trade practices" within the meaning of § 753(21). [Dkt. 56, ¶ 99 (*citing* 15 O.S. §§ 752(13-(14))].[3] According to plaintiffs, these purported unlawful practices include:

(i)    Hench's failure to supply or disclose the written warranty to plaintiffs, as required by the Magnusson-Moss Warranty Act;

(ii)   Hench's and Rupp's misrepresentations concerning the characteristics, uses, and benefits of the mobile home;

(iii)  Hench's and Rupp's misrepresentations concerning the "rebuilt" status of the home, as opposed to its being "new";

(iv)   Hench's inconsistent and confusing statements regarding cost and financing terms applicable to the home;

(v)    Hench's breach of implied warranties;

(vi)   Hench's breach of express warranties;

---

[3] The OCPA defines "deceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." 15 O.S. § 752(13). "Unfair trade practice" means "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* § 752(14).

5

(vii)    The failure of "Defendants" to resolve responsibility for damage to the home and their repeated attempts to shift blame among themselves; and

(viii)    "Defendants'" failures to identify and notify plaintiffs of damages prior to their receipt and possession of the home.

[*Id.*, ¶¶ 99(i)-(vi), (viii)-(ix)].

Relying on this Court's prior conclusion that the Amended Complaint "contains no factual allegations of false advertising, price misrepresentations, or bait-and-switch tactics" to support an OCPA claim against Jessup, defendants argue that Count V must likewise be dismissed as to Hench's and Rupp. [Dkt. 198 at 7 (*quoting* Dkt. 196 at 7]). In that prior Order, the Court further observed that the Amended Complaint "alleges only implied warranties" against Jessup and held that plaintiffs' OCPA theories against Jessup "sound in warranty enforcement and contract administration, not deception or unfairness" as defined by §§ 752(13)-(14). [Dkt. 196 at 7]. The same Count V paragraphs, however, articulate multiple discrete misrepresentation-based theories against Hench's and Rupp that extend beyond mere warranty administration. In their Rule 12(c) briefing, plaintiffs contend that Hench's and Rupp induced the sale by representing a "full one-year warranty," repeatedly assured plaintiffs that serious structural issues would be corrected under that warranty, and then reversed course after the warranty period expired. [Dkt. 201 at 11]. Taken as true, these allegations describe conduct with the "capacity to deceive" within the meaning of Oklahoma jurisprudence and the OCPA's broad "unfair" and "deceptive trade practice" definitions. *See* <u>Patterson</u>, ¶ 33, 19 P.3d at 847, n.12.

Defendants do not deny that such misrepresentation theories are pleaded, but characterize them as "warranty enforcement and contract administration." [Dkt. 198

at 7]. Their position effectively seeks to reclassify the alleged misrepresentations and omissions as purely contractual disputes, rather than to challenge the sufficiency of plaintiffs' allegations of deceptive and unfair practices. Viewing the pleadings in the light most favorable to plaintiffs, the Court concludes that the Amended Complaint plausibly alleges "unlawful practices" under § 753 as to Hench's and Rupp. Accordingly, Hench's and Rupp are not entitled to Rule 12(c) dismissal of Count V on the ground that plaintiffs failed to establish an unlawful practice under the OCPA.

### 2. Regulated-Transaction Exemption

The OCPA provides that "[n]othing in this act shall apply to ... [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state ...." 15 O.S. § 754(2). Courts interpreting § 754 have found the exemption applicable when the alleged conduct constituting a violation of the OCPA is regulated by a state or federal agency. *Rogers v. QuikTrip Corp.*, 2010 OK 3, ¶ 17, 230 P.3d 853, 858, n.40; *Dennis v. Good Deal Charlie, Inc.*, No. CIV-20-295-GKF-JFJ, 2022 WL 3577244 at *1 (N.D. Okla Aug. 19, 2022) (collecting cases). However, the exemption does not apply when a defendant's conduct is governed in some respects by a state or federal agency but the specific conduct at issue is not regulated under laws administered by the regulatory body acting under statutory authority. *See e.g., Sisemore v. Dolgencorp, LLC*, 212 F.Supp.3d 1106, 1109 (N.D. Okla. May 11, 2016) (*citing Conatzer v. Am. Mercury Ins. Co., Inc.*, 2000 OK CIV APP 141, ¶¶ 9-13, 15 P.3d 1252, 1255).

Relying on this Court's prior determination that the "actions or transactions complained of" against Jessup fell within a "pervasively regulated domain," Hench's and Rupp contend they are likewise shielded by § 754(2). As with Jessup, they invoke their licensure by the Oklahoma Used Motor Vehicle, Dismantler, and Manufactured Housing Commission ("Commission") and HUD's Manufactured Homes Construction and Safety Standards Act to argue that the combined regulatory framework encompasses the core activities underlying Count V. They emphasize the Commission's authority over licensing, operations, fees, penalties, and compliance of manufactured home dealers such as Hench's and salespersons such as Rupp,[4] together with HUD's extensive standards governing design, construction, transport, labeling, and installation of manufactured homes.[5] [Dkt. 198 at 5-6; Dkt. 211 at 3-5].

HUD's construction and safety standards, by their terms, impose obligations on *manufacturers* like Jessup with respect to design, construction, transport, labeling, and installation of manufactured homes. *See* 24 C.F.R. § 3280.3. Plaintiffs correctly point out that those provisions do not regulate how a retail *dealer* or *salesperson* (i) represents the existence, source, scope, or conditions of a dealer-offered warranty and its limitations; (ii) discloses or fails to disclose the manufacturer's limited warranty and its limitations; or (iii) uses serial promises of repair to defer action until after a one-year period and then refuses performance. [Dkt. 201 at 15]. While defendants emphasize the sheer volume of HUD provisions governing construction, installation, and enforcement, they do not identify specific sections that

---

[4] *See* 47 O.S. §§ 582(E)(1)-(2); OKLA. ADMIN. CODE ("OAC") Title 765, Chapters 35-38.
[5] *See* 42 U.S.C. §§ 5401-5426; 24 C.F.R. §§ 3280-3286, 3800.

regulate the consumer-facing sales and warranty-presentation practices alleged in Count V. Under Oklahoma law, the central question is whether the offending conduct itself is regulated, not whether defendants operate in a pervasively regulated industry. *See Estate of Hicks v. Urban East, Inc.* ("*Hicks*"), 2004 OK 36, ¶ 33, 94 P.3d 88, 95; *Continental Res. v. Wolla Oilfield Servs.*, 2022 OK 40, ¶ 7, 510 P.3d 175, 179.

With respect to the Commission, defendants cite 47 O.S. § 584 and OAC Title 765, Chapters 35-38, and argue that these provisions "strictly regulate" dealers and salespersons. Those authorities do grant the Commission robust licensing and disciplinary powers, including the ability to deny, suspend, or revoke licenses and to impose administrative fines for certain conduct, such as false or misleading advertising or unworkmanlike installation. *See e.g.*, 47 O.S. §§ 584(A)(6)(a)-(h). However, as plaintiffs correctly note, these statutes and rules: (i) are structured around licensing qualifications, grounds, and procedures, not detailed regulation of the manner in which dealers must present and honor dealer-side warranties or describe warranty source and scope to consumers; and (ii) do not create consumer causes of action or remedial procedures addressing the particular pre-sale and post-sale misrepresentations about a dealer warranty that plaintiffs allege here, in contrast to the Nursing Home Care Act's comprehensive regulation of solicitations, contracts, standards, and remedies in *Hicks*. [Dkt. 201 at 15-18].

In its prior Order, the Court concluded that plaintiffs "have not identified any discrete, pled category of Jessup's conduct that falls outside the regulated domain." [Dkt. 196 at 9]. That conclusion flowed from the manufacturer-focused nature of the

9

OCPA claim asserted against Jessup and the direct overlap between Jessup's alleged conduct and the HUD and Commission regimes governing construction and installation. The same conclusion does not automatically extend to Hench's and Rupp. On the record presently before the Court, the sales-side misrepresentation theories asserted against these defendants have not been shown to be wholly subsumed within either the HUD standards or the Commission's licensing and enforcement structure.

Accordingly, the Court cannot conclude that § 754(2) clearly exempts the challenged conduct of Hench's and Rupp in the same manner that it bars plaintiffs' OCPA claim directed at Jessup's manufacturing-related obligations. Because defendants have not demonstrated that the specific "actions or transactions complained of" are regulated under laws administered by a state or federal regulatory body acting under statutory authority, they are not entitled to judgment on the pleadings on Count V based on the OCPA's regulated-transaction exemption.

### B.    BREACH OF EXPRESS AND IMPLIED WARRANTIES | COUNT III

Plaintiffs allege in Count III that Hench's, by delivering a manufactured home with unsafe nonconformities, breached express warranties as well as implied warranties of habitability, merchantability, and fitness for a particular purpose. [Dkt. 56, ¶¶ 81-84]. Relying on this Court's prior dismissal of the implied warranty theory against Jessup, Hench's seeks judgment on the pleadings as to Count III, contending that plaintiffs merely recast disagreements over the condition of the manufactured home and repair responsibility rather than articulating any actionable breach of warranty under state or federal law. [Dkt. 198 at 8-9; Dkt. 211 at 7-8].

As explained in that prior Order, the Court dismissed plaintiffs' claim against Jessup for breach of the implied warranty of fitness for a particular purpose under 12A O.S. § 2-315, concluding that use of a manufactured home as a residence is an ordinary, not "particular," use and that plaintiffs had not alleged seller knowledge of a particular purpose or reliance on Jessup's skill in selecting the home. [Dkt. 196 at 11-12]. The Court did not, however, foreclose other warranty theories as to Jessup. Plaintiffs now treat that ruling as the law of the case and affirmatively represent that they will *not* pursue an implied-fitness theory against Hench's. *See* [Dkt. 201 at 22, n.10]. As Hench's has not meaningfully developed argument on the remaining implied warranty theories, the Court confines its present analysis to plaintiffs' express-warranty theory.

Under Oklahoma's Uniform Commercial Code ("UCC"), an express warranty arises when any affirmation of fact or promise by the seller relating to the goods becomes part of the basis of the bargain, or where a description of the goods forms part of that bargain. 12A O.S. § 2-313(1). Plaintiffs' allegations that Hench's, through its salesperson and written materials, promised to "take care of" all issues reported within the first year, provided warranty documentation reflecting that undertaking, and then refused to perform the promised remedial obligations, adequately plead the existence of an express warranty, its breach, and resulting damages. *See Collins Radio Co. of Dallas, Tex. v. Bell*, 1980 OK CIV APP 57, ¶ 40, 623 P.2d 1039, 1052. Hench's effort to recast these allegations as nothing more than disagreements over "repair responsibility" does not defeat the well-pleaded elements of an express-

11

warranty claim; rather, it goes to the merits and cannot support judgment on the pleadings. Accordingly, the Court concludes that Count III states a plausible claim against Hench's for breach of an express one-year warranty but does not proceed on any theory of implied warranty of fitness for a particular purpose.

### C. VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT | COUNT VII

In Count VII, plaintiffs assert an express warranty claim against Hench's under the Magnuson-Moss Warranty Act, ("Magnuson-Moss" or "the Act"), which creates a private right of action where a "supplier, warrantor, or service contractor" fails to comply with obligations under the Act or under a written warranty, with state law supplying the substantive warranty rules. *See* Platt v. Winnebago Indus., Inc., 960 F.3d 1264, 1269 (10th Cir. 2020) (*quoting* 15 U.S.C. § 2310(d)(1)). Defendants contend that plaintiffs fail to state an express warranty claim under Count VII because, in their view, Hench's merely passed along Jessup's manufacturer warranty and did not itself undertake written warranty obligations.

The Amended Complaint alleges that, in connection with the sale of the manufactured home, Hench's provided plaintiffs a separate "Home Warranty Information Sheet," on Hench's letterhead, which expressly stated that (i) the home carried a one-year warranty, (ii) Hench's would correct cosmetic issues at trim-out, and (iii) "any other issues would be taken care of within the first year." [Dkt. 56, ¶¶ 19-20]. The Amended Complaint further alleges that Hench's retail contract "states" that the home "was covered by a separate written warranty from Hench's," and that plaintiffs were instructed to and did use Hench's "Service Line" to request warranty

service. [*Id.*, ¶¶ 17, 30, 38]. In Count VII, plaintiffs specifically plead that "Defendant Hench's is a warrantor under the Act and … offered a written warranty covering the Home (the Warranty)." [*Id.* ¶ 110].

Taken as true, these allegations describe an undertaking in writing, made in connection with the sale of a consumer product, to repair or otherwise take remedial action if the product fails to conform to the promised condition during a one-year period. That description falls within the Act's definition of a "written warranty," which includes "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." 15 U.S.C. § 2301(6). It also supports the pleaded conclusion that Hench's acted as a "warrantor," defined as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty," *Id.* § 2301(5), with respect to its own one-year warranty, rather than functioning solely as a conduit for Jessup's manufacturer warranty. In addition, as set forth in this Order, plaintiffs have adequately alleged a breach of express warranty by Hench's under Oklahoma law, which is incorporated into their Magnuson-Moss theory.

Defendants' contention that Hench's merely "supplied" warranty information, or that paragraph 19 of the Amended Complaint "admits" adequate disclosure of another entity's warranty, is insufficient to defeat plausibility at this stage. The Amended Complaint, together with plaintiffs' response, plausibly alleges that (i)

Hench's own Home Warranty Information Sheet and oral representations promised a distinct, dealer-side, full one-year warranty; (ii) those writings neither identify Jessup as the warrantor nor describe the terms of Jessup's limited warrant; and (iii) Hench's itself undertook and controlled warranty performance through its service line and repair efforts. *See* 15 U.S.C. §§ 2302, 2303(a); 16 C.F.R. § 702.3. Accepting those allegation as true, the Court cannot conclude as a matter of law on a Rule 12(c) record that Hench's was only relaying a manufacturer warranty or that it owed no express warranty obligations of its own. Accordingly, the Court concludes that plaintiffs have stated a plausible Magnuson-Moss claim for breach of an express written warranty against Hench's. Defendants' motion for judgment on the pleadings is therefore denied as to the express-warranty component of Count VII.

### D.  NEGLIGENCE | COUNT IV

Defendants contend that *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289, and its progeny bar plaintiffs' negligence claim because Hench's has stipulated that Rupp acted within the course and scope of his employment at all relevant times. [Dkt. 198 at 10]. Under *Jordan*, where a plaintiff's tort theory against an employer sounds solely in negligent hiring, supervision, or retention and the employer admits vicarious liability, separate negligent-hiring or similar theories become "unnecessary and superfluous." *Jordan*, ¶ 16, 935 P.2d at 293.

Plaintiffs, however, maintain that Count IV does not assert negligent-hiring, supervision, or retention claims and is not confined to Rupp's conduct; rather, they contend that the claim targets Hench's own operational acts and omissions in

authorizing and performing remedial work that allegedly damaged the home and took it out of compliance with applicable construction standards. [Dkt. 201 at 23 (*citing* 42 U.S.C. § 5402(6); 24 C.F.R. § 3280.2)]. The Amended Complaint alleges, among other things, that Hench's accepted responsibility for frame damage occurring before plaintiffs took possession, undertook frame repairs by removing several steel crossmembers, and thereby exacerbated the home's structural deficiencies and contributed to ongoing damage to the floor system and subfloor. [Dkt. 56, ¶¶ 45, 50-52]. Those averments are framed as direct negligence by Hench's, not merely derivative liability through Rupp.

By its terms and as applied in subsequent Oklahoma and federal decisions, *Jordan* addresses duplicative employer-liability theories that accompany an admitted *respondeat superior* claim and does not preclude independent causes of action premised on an employer's own negligent performance of work or breach of a direct duty of care. The cases invoked by Hench's—such as *N.H. v. Presbyterian Church U.S.A.*, 1999 OK 88, 998 P.2d 592, and *Horton v. CRST Expedited*, CIV-15-226-RAW, 2015 WL 7575909 (E.D. Okla. Nov. 25, 2015)—involved circumstances where the employer's only alleged misconduct was negligent hiring, supervision, or retention of the employee tortfeasor. Here, by contrast, plaintiffs advance a theory that Hench's itself negligently performed warranty or remedial work on the home's frame and structure, which is analytically distinct from any claim grounded solely in Rupp's pre-sale representations. On this record, *Jordan* does not supply a legal basis for granting Hench's judgment on the pleadings as to Count IV.

### E.   UNJUST ENRICHMENT | COUNT VI

Unjust enrichment "is a recognized ground for recovery in Oklahoma," <u>N.C. Corff P'ship, Ltd v. OXY USA, Inc.</u>, 1996 OK CIV APP 92, ¶ 24, 929 P.2d 288, 298, and describes "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable," <u>Harvell v. Goodyear Tire & Rubber Co.</u>, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. "Under Oklahoma law, a party may only recover under this theory by showing 'enrichment to another coupled with a resulting injustice.'" <u>Cty. Line Inv. Co. v. Tinney</u>, 933 F.2d 1508, 1518 (10th Cir. 1991) (citation omitted) (applying Oklahoma law). As an equitable claim, unjust enrichment generally is unavailable where the plaintiff has an adequate remedy at law. <u>Harvell</u>, *supra*. Oklahoma courts have emphasized their unwillingness to resort to the doctrine of unjust enrichment where plaintiffs have asserted claims alleging breach of contract, <u>Krug v. Helmerich & Payne, Inc.</u>, 2013 OK 104, ¶ 34, 320 P.3d 1012, 1022, or negligence, <u>Hydro Turf, Inc. Int'l v. Fidelity Ins. Co.</u>, 2004 OK CIV APP 45, ¶ 19, 91 P.3d 667, 673.

In addition to unjust enrichment, plaintiffs assert a breach of contract claim against Hench's and Rupp, as well as a negligence claim against Hench's. [Dkt. 56, ¶¶ 70-79, 87-97]. Because these claims provide adequate legal remedies under Oklahoma jurisprudence, the unjust enrichment claim against those defendants is barred as a matter of law.[6] Accordingly, Hench's and Rupp are entitled to judgment on the pleadings with respect to Count VI.

---

[6] Plaintiffs are correct that "Oklahoma law [] 'clearly permits pleading alternative remedies … as long as plaintiffs are not given double recovery for the same injury.'" [Dkt. 201 at 25]. Even so,

## III. CONCLUSION

WHEREFORE, the motion for judgment on the pleadings [Dkt. 198] filed on behalf of defendants Hench's and Rupp is hereby **GRANTED IN PART** and **DENIED IN PART**. Following entry of this Order, the status of each challenged claim asserted in the Amended Complaint is as follows:

- Count III, insofar as it alleges breach of implied warranty of fitness for a particular purpose against Hench's, is dismissed as a matter of law;

- Count IV alleging negligence against Hench's remains pending;

- Count V alleging violations of the OCPA against Hench's and Rupp remains pending;

- Count VI alleging unjust enrichment against Hench's and Rupp is dismissed as a matter of law; and

- Count VII alleging violations of the Magnuson-Moss Act against Hench's remains pending.

IT IS SO ORDERED on this 13th day of January, 2026.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

---

federal courts remain free to dispose of claims that are unnecessary or redundant under Oklahoma law. *See Cardenas v. Ori*, No. CIV-14-386-R, 2015 WL 2213510 at *3 (W.D. Okla. May 11, 2015); *Oliver v. Soto*, CIV-15-1106-R, 2016 WL 815343 at *2 (W.D. Okla. Feb. 29, 2016). Against that backdrop, plaintiffs' contention that dismissal of Count VI "at the pleading stage" is premature carries no weight here, as discovery closed on September 5, 2025 [Dkt. 193 at 2], and plaintiffs have substantively responded to multiple *Daubert* and summary judgment motions.