# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) CARTER FIELDS, an individual;<br>(2) HANNAH HIPPS, an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| *v.* | ) | |
| | ) | |
| (1) HENCH'S COUNTRY LIV'N HOMES<br>OF CALERA;<br>(2) JESSUP HOUSING;<br>(3) CROWN CONTRACTING, LLC;<br>(4) 21st MORTGAGE CORPORATION;<br>(5) AUSTIN RUPP, an individual;<br>(6) STEPHEN STUBBS, an individual, | ) | |
| | ) | |
| Defendants, | ) | Case No. 6:23-cv-372-JAR |
| *and* | ) | |
| | ) | |
| (1) CROWN CONTRACTING, LLC;<br>(2) 21st MORTGAGE CORPORATION, | ) | |
| | ) | |
| Cross-Claimants, | ) | |
| *v.* | ) | |
| | ) | |
| (1) STEPHEN STUBBS, an individual;<br>(2) HENCH'S COUNTRY LIV'N HOMES<br>OF CALERA, | ) | |
| | ) | |
| Cross-Defendants. | ) | |

## OPINION AND ORDER

Before the Court are three motions for summary judgment filed on behalf of

Crown Contracting, LLC ("Crown") [Dkt. 161], Stephen Stubbs ("Stubbs") [Dkt. 171],

Hench's Country Liv'n Homes of Calera ("Hench's") and Austin Rupp ("Rupp") [Dkt.

200]. Plaintiffs Carter Fields ("Mr. Fields") and Hannah Hipps timely responded in

1

opposition [Dkts. 173, 185, 210] and the moving defendants submitted reply briefs [Dkts. 187, 188, 215].[1]

## I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, a court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*quoting Anderson*, 477 U.S. at 249). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Id*. (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Insu. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II. UNDISPUTED MATERIAL FACTS

Plaintiffs entered into a contract with defendant Hench's for the purchase of a new three-bedroom mobile home manufactured by defendant Jessup Housing

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

("Jessup") for a total price of $78,041.65. Defendant Rupp, a salesperson for Hench's, facilitated the transaction. [Dkt. 200-8].

### A.    CONTRACTUAL TERMS AND WARRANTIES

Under the sales contract, Hench's undertook to deliver the manufactured home to plaintiffs' property and to block, level, and tie it down in accordance with state code. [Dkt. 200-8]. Hench's also provided plaintiffs with a "Home Warranty Information Sheet," prepared on Hench's letterhead, which stated that the home was covered by a one-year warranty, that cosmetic items would be corrected during the "trim-out" process, and that any additional issues—such as electrical problems or water leaks—would be addressed during the one-year warranty period. [Dkt. 210-8; Dkt. 210-3 at 1-2 (35:12-36:12)]. During discovery, plaintiffs obtained a copy of Jessup's written manufacturer's warranty. [Dkt. 210-10]. Corporate representatives of both Hench's and Jessup testified that the Home Warranty Information Sheet does not accurately describe the terms of Jessup's limited warranty. [Dkt. 210-3 at 2-3 (37:11-39:5); Dkt. 210-9 at 6-7 (121:4-122:1)].

### B.    DELIVERY

Hench's retained defendant Crown to carry out delivery and installation of plaintiffs' home.[2] Crown, in turn, engaged defendant Stubbs to perform the physical delivery.[3] [Dkt. 173 at 7, ¶ 3; Dkt. 187 at 2; Dkt. 185-6]. Plaintiffs elected to have their 16-foot by 76-foot mobile home placed on a site pad previously prepared for a

---

[2] Plaintiffs' direct interactions with Crown were limited to "passing conversations" during the installation process. [Dkt. 161 at 3, ¶ 10; Dkt. 173 at 6].

[3] Plaintiffs assert they did not realize Stubbs was an independent contractor, as opposed to a Crown employee, until January 31, 2024. [Dkt. 185-12].

3

16-foot by 48-foot tiny home. [Dkt. 161-2 at 6 (169:16-23)]. In connection with that decision, plaintiffs signed (i) a waiver agreeing not to hold "Hench's and the transport/set company" liable "for any settling issues that may occur due to the home being set on a pad site built by the customer," [Dkt. 161-9], and (ii) a notice acknowledging that the site had to be prepared in accordance with 24 C.F.R. § 3285 prior to installation, [Dkt. 161-10].

Stubbs delivered the home on September 14, 2021. [Dkt. 161-5]. Upon his arrival, plaintiffs met Stubbs at the driveway to provide gate access and to observe the delivery. [Dkt. 171-4 at 3-4 (12:19-13:14)]. Mr. Fields signed a document acknowledging that the home was delivered "in the correct and agreed position." [Dkt. 171-3]. Plaintiffs first entered the home on September 15, 2021 and immediately noticed that the flooring was unlevel. [Dkt. 173-2 at 3 (28:5-16); Dkt. 200-1 at 5 (28:5-16), 20-21 (156:25-157:13); Dkt. 200-5 at 17 (296:2-12)]. Mr. Fields promptly emailed Hench's stating that "the floors were messed up" and, according to plaintiffs, Rupp responded in substance that they should allow the house to "get blocked up" and then "see what it looks like." [Dkt. 173-2 at 3-4 (28:17-29:14), 7-8 (157:6-158:20)].[4]

C. INSTALLATION

Crown completed installation of the home on September 24, 2021. [Dkt. 161-1 at 23-24 (302:19-303:1)]. On that date, Mr. Fields signed a statement acknowledging that Crown "leveled my house to my satisfaction, and any future relevels will be an

---

[4] In a June 15, 2023 letter to Hench's, plaintiffs reported that "[f]rom the onset of our possession of the manufactured home, there were noticeable issues with [its] structure and function." [Dkt. 200-6 at 2]. Ten days later, in a June 25, 2023 email to HUD, plaintiffs asserted that "we have been trying to get [Hench's] to fix our house since day 2 of having it". [Dkt. 200-7 at 2].

additional cost." [Dkt. 161-4; Dkt. 173-1 at 6 (79:9-20)]. The parties agree that Crown properly anchored the home, [Dkt. 161 at 5, ¶ 25; Dkt. 173 at 5], but they dispute whether Crown properly installed the supporting piers. Plaintiffs received full possession of, and moved into, the home on September 24, 2021.

### D.    REMEDIATION AND REPAIRS

Hench's submitted a "Factory Request" on or about January 24, 2022 identifying several issues with plaintiffs' home, including high floor joists, two loose windows, ripped vinyl flooring, and glue residue on hallway flooring. [Dkt. 210-40]. In addition, a "Parts Request Form" was submitted on plaintiffs' behalf for replacement materials, including three "2x6" floor joists, six interior window trims, a "13.6x10ft" section of linoleum, a "30x68" window, six sheets of vinyl siding, and one roll of window/door tape. [Dkt. 210-26].

In March and April 2022, Jessup conducted multiple inspections of the home and recorded, among other findings: (i) four concrete block piers not in contact with the frame; (ii) "crossover bars from eyebeams [being] bent from possibly hitting object in transit";[5] (iii) a loose window frame notwithstanding Hench' prior replacement of the window; and (iv) damage to "lino-back door" attributed to an uneven floor joist. [Dkt. 173-9; Dkt. 210-19; Dkt. 210-22; Dkt. 210-23; Dkt. 210-24]. Hench's completed cosmetic repairs on or before June 24, 2022, [Dkt. 185-15 at 2], and plaintiffs signed an undated acknowledgment stating those cosmetic repairs had been completed to

---

[5] Plaintiffs' expert, Robert Chynoweth, testified that he has no opinions regarding whether transport or delivery caused any of the problems he observed with plaintiffs' home. [Dkt. 171-10 at 2 (48:22-25), 15 (122:8-17)].

their satisfaction, while noting four remaining problems: significant floor, decking, and linoleum issues throughout the home; four leaking and loose windows; a noisy roof; and needed ceiling repairs, [Dkt. 201-17].

On September 6, 2022, Jessup inspected the home and observed: (i) major flooring, decking, and linoleum problems; (ii) a one-inch downward slope of the home; (iii) 16-foot gaps between crossbars, rather than the expected 8-foot gaps, attributed to Hench's "cutting the c[ross]bars out" without replacement;[6] (iv) moisture damage to window seals and trim resulting from window leakage; (v) ceiling damage; and (vi) a "popping" kitchen floor. [Dkt. 210-25]. A Hench's representative later advised plaintiffs, on October 4, 2022, that the company was attempting to secure a welder to reinstall the crossmembers and intended to relevel the home before Jessup undertook flooring repairs. [Dkt. 210-30]. The record contains no indication that such reinstallation of the crossmembers ultimately occurred.

A property inspection report obtained by plaintiffs in August 2023 concluded that the roof was not well supported and deflected significantly when stepped on, which was "likely due to damaged trusses and/or trusses being spaced too far apart." [Dkt. 210-27 at 12 (marking roof condition as "fair")].[7] The report further noted that at least three supports "under the kitchen/living room area" had been removed, likely in connection with joists being cut out, and that this area contained numerous raised

---

[6] A corporate representative of Hench's testified that the crossmembers had been removed "because they were bent," or because an agent of Hench's "thought they were bent." [Dkt. 210-3 at 8-9 (105:20-106:2)].

[7] Plaintiffs' expert testified that Crown's installation did not cause any roof or flooring defects. [Dkt. 200 at 5-6, ¶¶ 18-19; Dkt. 210 at 9, ¶¶ 18-19].

and uneven zones. [*Id*. at 15 (marking framing condition as "poor")]. The inspector also observed bowed or warped siding in several locations, "likely" attributable to the removal of multiple crossmembers from the home's framing. [*Id*. at 13 (marking siding condition as "fair")].

### E.   PROCEDURAL HISTORY

Plaintiffs commenced this action on September 18, 2023 in the District Court of Bryan County, Oklahoma against defendants Hench's, Jessup, Crown, 21st Mortgage Corporation ("21st Mortgage"), and Rupp. [Dkt. 2-3]. On October 27, 2023, defendants removed the action to this Court pursuant to 28 U.S.C. § 1331. [Dkt. 2]. By express consent of all parties, [Dkt. 48], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned U.S. Magistrate Judge exercises complete jurisdiction over this action through and including trial and entry of a final judgment.

Plaintiffs amended their complaint ("Amended Complaint") on March 4, 2024, adding defendant Stubbs and asserting seven causes of action: fraud and deceit against Hench's, Rupp, and 21st Mortgage (Count I); breach of contract against Hench's, Rupp and 21st Mortgage (Count II); breach of warranty against Hench's, Jessup and 21st Mortgage (Count III); negligence against Hench's, Jessup, Crown, Stubbs and 21st Mortgage (Count IV); violations of the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. § 751 *et seq*., against Hench's, Rupp, Jessup, Crown, Stubbs and 21st Mortgage (Count V); unjust enrichment against Hench's, Rupp, Jessup and 21st Mortgage[8] (Count VI); and violations of the Magnusson Moss

---

[8] On March 24, 2025, the Court granted plaintiffs' request to voluntarily dismiss Count VI as asserted against 21st Mortgage. [Dkt. 166].

Warranty Act, 15 U.S.C. § 2301 *et seq.*, against Hench's, Jessup and 21st Mortgage (Count VII). [Dkt. 56, ¶¶ 62-113].

By Order entered September 18, 2025, the Court granted in part Jessup's motion to dismiss, dismissing Count V as to Jessup and dismissing Count III insofar as it alleged breach of implied warranty of fitness for a particular purpose against Jessup. [Dkt. 196]. By Order entered January 13, 2026, the Court granted in part Hench's and Rupp's joint motion for judgment on the pleadings, dismissing Count VII as to both defendants and dismissing Count III insofar as it alleged breach of implied warranty of fitness for a particular purpose against Hench's. [Dkt. 245]. That same day, the Court granted 21st Mortgage's motion to bifurcate. [Dkt. 247].

## III.    DISCUSSION

The Court first addresses the moving defendants' contention that plaintiffs' negligence claims are barred by the applicable statute of limitations. The Court then considers the merits of defendants' arguments seeking summary judgment on plaintiffs' claims of negligence, fraud and deceit, breach of contract, breach of warranty, and violations of the OCPA.

### A.    STATUTE OF LIMITATIONS

Plaintiffs' negligence claims against Crown, Stubbs, and Hench's are subject to a two-year statute of limitations. *See* 12 O.S. § 95(3). The statute is subject in certain instances to a "discovery rule," which provides that the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury. *See, e.g.*, *Sam Roberts Noble Found., Inc. v. Vick* ("*Vick*"), 1992 OK 140, ¶ 22, 849 P.2d

619, 624; *Reynolds v. Porter*, 1988 OK 88, ¶ 6, 760 P.2d 816, 820 n.9; *Funnell v. Jones*, 1985 OK 73, ¶ 6, 737 P.2d 105, 107. The burden of pleading and proving the applicability of the affirmative defense of statute of limitations generally rests on the defendant. *Moneypenney v. Dawson*, 2006 OK 53, ¶ 2, 141 P.3d 549, 551. Once the bar is established, the plaintiff bears the burden of proving the statute of limitations should be tolled. *Beatty v. Scott*, 1961 OK 140, ¶ 5, 362 P.2d 699, 701. Here, plaintiffs do not dispute that a two-year limitations period governs their negligence theories.

Under Count IV, plaintiffs allege that Stubbs failed to exercise reasonable care in delivering the home, that Crown failed to exercise reasonable care in installing the home, and that Hench's failed to exercise reasonable care in repairing the home. [Dkt. 56, ¶¶ 91-95]. It is undisputed that Stubbs delivered plaintiffs' home on September 14, 2021, that plaintiffs observed the flooring appeared "lumpy and uneven" on September 15, 2021, that Crown completed installation of the home on September 24, 2021, that plaintiffs initiated this action on September 18, 2023, and that plaintiffs added Stubbs to this action on March 4, 2024.

### 1.    Crown's Motion for Summary Judgment

Crown contends plaintiffs' negligence claim is barred by the applicable two-year statute of limitations because they admittedly discovered the complained-of flooring defects more than two years before this action was filed. [Dkt. 161 at 7 (*citing* 12 O.S. §§ 92, 95)]. Crown relies on plaintiffs' testimony affirming that, on September 15, 2021, they "noticed issues beyond anything a simple cosmetic trim-out could cure," [Dkt. 161-2 at 2-3 (156:25-157:10); Dkt. 161-6 at 9-10 (306:21-307:7)]; Mr. Fields'

testimony that he immediately emailed defendant Rupp that the floors were "messed up"; and plaintiffs June 15, 2021 letter to Hench's stating that "[f]rom the onset of our possession … there were noticeable issues with the structure and function of the home," [Dkt. 171-8]. Applying *Vick*, Crown argues that the two-year limitations period commenced when plaintiffs first observed these manifest defects on September 15, 2021. [Dkt. 187 at 5-7].

Plaintiffs respond that their negligence claim is timely because Crown allegedly caused or exacerbated the floor damage when it blocked, leveled, and tied down the home on September 24, 2021. They distinguish the initial "unevenness" observed on September 15 from the more serious conditions they contend existed after setup, and plaintiffs emphasize that Rupp advised them the floors would "even out" after installation [Dkt. 173 at 13 (*citing* Dkt. 173-2 at 3-4 (28:13-29:12)], which they say reasonably postponed discovery of any non-cosmetic structural defect. Plaintiffs further rely on internal Jessup documents attributing floor problems to loose piers and bent crossover bars [Dkt. 173-7], and contend they could not have discovered such sub-structure conditions until later inspections and contractor communications. Thus, according to plaintiffs, the discovery rule should not run against those aspects of their claim as of the September 15 delivery date.

Under Oklahoma law, a negligence claim accrues when the plaintiff knew or, in the exercise of reasonable diligence, should have known of the resulting injury, not when the plaintiff identifies the precise mechanism or responsible actor. *See Vick*, ¶¶ 22-25, 840 P.2d at 624-25; *Weathers v. Fulgenzi*, 1994 OK 119, ¶¶ 13-15, 884 P.2d

10

538, 541. Strictly applied, this standard would permit Crown to argue that any negligence theory tied to transportation and delivery is time-barred. On the present record, however, the Court finds there is a genuine dispute of material fact as to whether alleged structural and installation-related damage occurring on September 24, 2021 constitutes a distinct injury that accrued on that later date, thereby preserving plaintiffs' setup-related negligence theory against Crown within the two-year limitations period.

## 2. Stubbs' Motion for Summary Judgment

Stubbs maintains that plaintiffs' negligence claim against him accrued no later than September 15, 2021 and that, because he was not named as a defendant until March 4, 2024, the claim is untimely under the governing two-year limitations period. [Dkt. 171 at 8-10]. Plaintiffs respond that their amendment adding Stubbs as a party "relates back" to the original state-court petition filed on September 18, 2023 and should be treated as having been filed within the limitations period. [Dkt. 185 at 16].

Under the Federal Rules of Civil Procedure, an amendment may relate back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

11

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)-(C); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 547 (2010). Here, Stubbs was served with the summons and complaint more than 90 days after the original September 18, 2023 filing. *See* [Dkt. 63 at 2]. He therefore did not receive notice of this action within the period prescribed by Rule 4(m). As such, the amendment adding Stubbs does not "relate back" to the original petition. *See* Fed. R. Civ. P. 4(m).[9]

Moreover, controlling precedent makes clear that Rule 15(c)'s relation-back doctrine permits correction of a misnamed defendant but does not authorize a wholly new defendant once the limitation period has run. *See Graves v. Gen. Ins. Corp.*, 412 F.2d 583, 585-86 (10th Cir. 1969). Under Oklahoma law, the negligence claim against Stubbs accrued when plaintiffs first learned of damage to their home, even if the precise source or cause of that damage remained uncertain. *See Vick*, ¶¶ 28-29, 840 P.2d at 625-26. Plaintiffs do not dispute that they first discovered damage on September 15, 2021 but argue they did not know, and had no reason to know, that Stubbs' transportation and delivery contributed to that damage until a Jessup representative opined in mid-April 2022 that the crossbars were bent "due to transit." [Dkt. 185-10]. That argument conflates knowledge of injury with knowledge of causation. For accrual purposes, the critical date is when plaintiffs became aware of

---

[9] *See also, e.g.*, *Garvin v. City of Philadelphia*, 354 F.3d 215, 221 (3d Cir. 2003) (newly-added defendants must receive "notice of the institution of the action within the Rule 4 service period following the filing of the action"); *Barrow v. Weatherford Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995) (same); *Lee v. Airgas-Mid South, Inc.*, 793 F.3d 894, 898 (8th Cir. 2015) (same).

the injury itself, not when they completed their investigation or assembled evidence to support each element of the claim. *See Dummar v. Lummis*, 543 F.3d 641, 621 (10th Cir. 2008). Plaintiffs admittedly discovered their injury on September 15, 2021 and, unlike Crown, the record before the Court contains no evidence or allegations that Stubbs aggravated or contributed to any damage after that date.

Nor does plaintiffs' asserted lack of awareness of Stubbs' identity transform this into a "mistake" within the meaning of Rule 15(c)(1)(C)(ii). The Tenth Circuit has squarely held that a plaintiff's ignorance of the intended defendant's identity is not a "mistake concerning the identity of the proper party" for relation-back purposes. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Robert L. Kroenlein Tr. Ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1279 (10th Cir. 2014). Because the amendment adding Stubbs does not relate back to the original filing date, and because plaintiffs first asserted their negligence claim against him more than two years after they discovered any injury attributable to Stubbs, the Court finds that the claim is barred under 12 O.S. § 95 as untimely. Accordingly, Stubbs is entitled to summary judgment on plaintiffs' negligence claim.

### 3.    Hench's Motion for Summary Judgment

Hench's asserts that plaintiffs' negligence claim accrued no later than when plaintiffs first entered the home on September 15, 2021, observed "lumpy and uneven" flooring, and emailed Rupp that the floor was "messed up." [Dkt. 200 at 11]. In Hench's view, plaintiffs' subsequent written complaints reinforce that the injury was apparent from the outset, including a June 2023 letter to HUD stating that "[f]rom the onset of our possession … there were noticeable issues with the structure

and function of the home" [Dkt. 200-6], and an email reporting that plaintiffs "have been trying to get them to fix our house since day 2 of having it." [Dkt. 200-7]. Relying on *Vick*, Hench's argues these admissions establish inquiry notice of damage by September 15, such that the two-year limitations period expired before this action was filed, rendering the negligence claim untimely. [Dkt. 200 at 9-10].

Plaintiffs correctly observe that *Vick* arose in the context of a completed construction contract and gradual recognition of defects over several years, without any allegation that the defendant affirmatively reassured the owner that identified problems would be cured at a later stage of performance. Here, by contrast, the record includes (i) pre-installation advice from Rupp that the floor issues would resolve once the home was properly set, and (ii) later crossmember work by Hench's that plaintiffs allege independently damaged the frame and worsened floor and roof conditions. *See* [Dkts. 210-4, 210-25, 210-27]. Those circumstances materially distinguish this case from *Vick* and focus the limitations inquiry on when a reasonably prudent homeowner, in light of those assurances and subsequent acts, should be deemed to have "sufficient information" of compensable structural injury as opposed to temporary or remediable irregularities. Viewing the evidence in the light most favorable to plaintiffs, the Court concludes that a reasonable jury could find that Hench's June 2022 crossmember work caused a distinct injury within the two-year limitations period.

### B.  NEGLIGENCE | COUNT IV

The essential elements of negligence under Oklahoma law are: (1) a duty on

the part of the defendant to protect the plaintiff from injury; (2) a defendant's failure to perform its duty to the plaintiffs; and (3) injury to the plaintiff proximately caused by the defendant's failure to exercise the duty of care. *Berman v. Laboratory Corp. of Am.*, 2011 OK 106, ¶ 16, 268 P.3d 68, 72. Whether a duty exists is a threshold legal question for the court. *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018) (applying Oklahoma law).

The existence of duty depends on the relationship of the parties and the general risk involved in the common undertaking, *Wofford v. E. State. Hosp.*, 1990 OK 77, ¶ 10, 795 P.2d 516, 519, and can be based upon a contract, a special relationship, or general negligence principals, *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964. In *Lowery*, the Oklahoma Supreme Court declared that a duty arises "whenever the circumstances place [one] in a position towards [another] person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger or injury to the other person." *Id.*, ¶ 13, 160 P.3d at 964. The most important consideration is "foreseeability of harm to the plaintiff." *Id*.

However, "[a] foreseeable risk of harm alone is not enough to establish a duty of care." *McGehee*, 908 F.3d at 625. Oklahoma courts use this formulation to determine "the zone of risk." *Id*. Within that zone, a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Lowery*, ¶ 14, 160 P.3d at 964; *Wofford*, ¶ 11, 795 P.2d at 519.

### 1.    Crown's Motion for Summary Judgment

It is undisputed that Hench's retained Crown to fulfill its contractual obligation to "deliver, block, level, and tie down" plaintiffs' home in accordance with state code and that Crown, in turn, retained Stubbs to perform the physical delivery. Under Oklahoma law, Crown's duty to plaintiffs as third persons "is to be measured by the nature and scope of the contractor's contractual undertaking." *Copeland v. Admiral Pest Control Co.*, 1996 OK CIV APP 119, ¶ 9, 933 P.2d 937, 939 (*citing Qualls v. U.S. Elevator Corp.*, 1993 OK 135, ¶ 12, 863 P.2d 457, 462). Thus, Crown owed plaintiffs a duty to perform the blocking and leveling of the home with reasonable care and in compliance with applicable code.[10]

Plaintiffs contend that Crown breached its duty in the course of the home's installation. They specifically rely on the expert report of Robert Chynoweth, who observed that "various concrete block (CMU) supports" beneath the home were "not in contact with the steel I-beam frame rails." [Dkt. 91 at 4, 18-19]. Crown responds that Chynoweth did not ascribe any specific defect to the fact that certain piers were not in contact with the frame. Chynoweth's report, however, expressly links plaintiffs' uneven flooring to deficiencies in the CMU blocking configuration. [*Id.* at 22-24, 26]. Viewing this evidence in the light most favorable to plaintiffs, the Court concludes that a reasonable jury could find that Crown failed to exercise reasonable care in blocking and leveling the home, and that such failure contributed to the uneven

---

[10] Because Crown retained Stubbs to deliver the home, and plaintiffs' negligence claim against Stubbs is time-barred, any negligence theory premised on Crown's alleged shortcomings in the home's transport and delivery is likewise precluded as a matter of law. In addition, the parties do not dispute that Crown properly anchored, or "tied down," the home. *See* [Dkt. 161 at 5, ¶ 25; Dkt. 173 at 5]

flooring of which plaintiffs complain. Crown is therefore not entitled to summary judgment on plaintiffs' negligence claim.

### 2.    Hench's Motion for Summary Judgment

Hench's seeks to confine its obligations to the written sales contract, asserting that any duty owed to plaintiffs arose solely from the requirement that it "deliver, block, level, and tie down" the home in accordance with state code. [Dkt. 200-8]. *See Doyle v. Kelly*, 1990 OK 119, ¶ 3, 801 P.2d 717, 718 (recognizing an implied covenant of good faith and fair dealing in every Oklahoma contract). Plaintiffs, by contrast, identify duties sounding in negligence that they contend extend beyond the implied covenant of good faith, arguing that Hench's owed them a duty (i) to exercise reasonable care in delivering and installing the home, (ii) to perform remedial and repair work on the home in a reasonably careful manner, and (iii) to ensure that the completed installation was inspected by a certified installation inspector as required by state regulation. *See* OAC 765:37-8-1(a) ("All new manufactured home installations shall be inspected by a certified installation inspector.").[11]

Under Oklahoma law, a party who undertakes to perform services that carry a foreseeable risk of physical harm owes a common law duty to exercise reasonable care, independent of its contractual obligations. *See Marshall v. City of Tulsa*, 2024 OK 78, ¶¶ 23–25, 558 P.3d 1220, 1228–29; *Flint Ridge Dev. Co. v. Benham-Blair*

---

[11] In light of the Court's separate conclusions that any negligence theory based on transport and delivery is foreclosed and that Stubbs cannot be held liable in negligence due to the applicable limitations period, plaintiffs' negligence claim against Hench's centers on its own post-installation conduct—particularly the June 2022 removal and non-replacement of steel crossmembers under the home—and Hench's role, if any, in ensuring a proper, code-compliant installation and inspection.

*Affiliates, Inc.*, 1989 OK 48, ¶ 11, 775 P.2d 797, 801. Applying these principles, the Court concludes that plaintiffs have alleged a cognizable duty distinct from the implied covenant of good faith. Once Hench's undertook to coordinate and perform work on the structural components of the home, including directing the removal of steel crossmembers from the permanent chassis, it owed plaintiffs a duty to perform that work with reasonable care so as not to compromise the structural integrity of the home or render it non-compliant with applicable codes. Plaintiffs' additional theory that Hench's had a duty to ensure inspection by a certified installation inspector derives from a regulatory framework and Hench's role as a retailer. To the extent Hench's undertook to complete the installation and deliver a code-compliant home, that undertaking supports a duty in negligence to take reasonable steps to secure the required inspection.[12]

Accordingly, although Oklahoma law does not allow plaintiffs to recast every alleged breach of contract as a tort claim, it does recognize a separate duty of reasonable care where, as here, a retailer voluntarily undertakes structural work on a manufactured home and assumes responsibilities tied to code-compliant

---

[12] While Hench's has submitted a statement from a certified inspector reflecting a post-installation inspection of the home, plaintiffs contend that Hench's withheld the inspector's statement in discovery based on a work-product designation, obtained the statement without notice to plaintiffs, and failed to identify the statement on any exhibit list. *See* [Dkt. 210 at 9-10, ¶ 28]. Rule 26 requires a party to disclose and supplement the information and documents it may use to support its claims or defenses, and Rule 37(c)(1) generally bars the use of information not disclosed as required by Rule 26 "to supply evidence on a motion," unless the failure is substantially justified or harmless. The Tenth Circuit has instructed district courts to consider whether a nondisclosure is substantially justified or harmless by evaluating factors such as surprise to the opposing party, ability to cure the prejudice, disruption of trial, and the importance of the evidence. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Applying these principles here, and in the absence of any showing by Hench's that its nondisclosure of the inspector's statement was substantially justified or harmless, the Court declines to consider said statement at the summary judgment stage.

installation and inspection. On this record, plaintiffs' negligence claim against Hench's, insofar as it rests on those independent undertakings and not merely to alleged nonperformance of contractual promises, alleges breach of a cognizable duty under Oklahoma law and is not subject to summary judgment on duty-based grounds.

### C.    FRAUD AND DECEIT | COUNT I

Plaintiffs assert claims against Hench's and Rupp for fraud and deceit, encompassing both actual and constructive fraud. *See* 15 O.S. § 58 (defining "actual fraud"); 15 O.S. § 59 (defining "constructive fraud"); 76 O.S. § 3 (defining "deceit"). While plaintiffs must ultimately prove fraud by clear and convincing evidence, "it is not necessary that evidence of fraud be 'clear and convincing' to escape a demurrer to the evidence" but "there must be evidence of each element of fraud presented before the issue may be submitted to the jury." *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008) (applying Oklahoma law). The existence of fraud, given evidence for each element, is a question of fact for the jury. *Id*.

### 1.    Actual Fraud

Actual fraud is "the intentional misrepresentation or concealment of a fact, with an intent to deceive, which substantially affects another person." *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 12, 308 P.3d 1041, 1045. To recover under a theory of actual fraud, plaintiffs must prove:

> (1) the defendant made a material representation; (2) the representation was false; (3) defendant made the representation when he knew the representation was false, or made the representation as a positive assertion recklessly, without any knowledge of its truth; (4) defendant made the representation with the intention that it should be acted upon

by plaintiff; (5) plaintiff acted in reliance on the representation; and (6) plaintiff suffered injury as a result of the representation.

*Lillard v. Stockton*, 267 F.Supp.2d 1081, 1112 (*citing McCain v. Combined Commc'n Corp. of Okla., Inc.*, 1998 OK 94, ¶ 11, 975 P.2d 865, 867).

Plaintiffs maintain that Hench's, through Rupp, affirmatively represented either that Hench's itself would provide a comprehensive one-year warranty or that Jessup's manufacturer's warranty was coextensive with the coverage described in the Home Information Warranty Sheet (the "Sheet"). They further contend these representations were made to induce their purchase of the home and that they relied on such assurances in electing to contract with Hench's. In support, plaintiffs cite testimony that Rupp stated any problems arising within the first year would be corrected, that "the warranty" was a central selling point of Hench's homes, and that, prior to the sale, he furnished the Sheet describing a one-year warranty covering trim-out cosmetic items as well as "any other issues within the first year," to be administered through Hench's service line. [Dkt. 210 at 28-31].

Hench's and Rupp counter that plaintiffs cannot establish any knowingly false representation, characterizing plaintiffs' understanding of warranty coverage as an "assumption" made notwithstanding their written acknowledgment that there were "no unwritten oral agreements" between the parties. They further assert that any warranty obligation arises, if at all, solely under Jessup's limited manufacturer's warranty. The record, however, reflects that the sales contract states that plaintiffs "received a separate written warranty from [Hench's] on the listed manufactured home," [Dkt. 201-14], and that Hench's in fact provided plaintiffs with the Sheet—

20

drafted by Hench's on company letterhead—purporting to describe the scope of the one-year warranty coverage, [Dkt. 210-8; Dkt. 210-3 at 1-2 (35:12-36:12)]. Corporate representatives of both Hench's and Jessup concede the Sheet does not accurately describe Jessup's limited warranty, and Hench's now denies providing any warranty at all.

Viewed in the light most favorable to plaintiffs, this evidence would permit a reasonable jury to find that Rupp and Hench's made material representations concerning the existence and scope of a one-year warranty; that such representations were false, or at least made recklessly without adequate knowledge of their truth; that the representations were intended to induce plaintiffs to purchase the home; that plaintiffs justifiably relied on them in deciding to contract with Hench's; and that plaintiffs suffered pecuniary loss when they were left with a defective home that was not repaired as represented. Under these circumstances, Hench's and Rupp are not entitled to summary judgment on plaintiffs' actual-fraud theory.

### 2. Constructive Fraud

Constructive fraud is "a breach of a legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." _Croslin_, ¶ 12, 308 P.3d at 1045-46. To recover under a theory of constructive fraud, plaintiffs must prove that:

> (1) the defendant owed plaintiff duty of full disclosure, whether as part of general fiduciary duty or as duty arising once defendant voluntarily chose to speak to plaintiff about particular subject matter, (2) the defendant misstated fact or failed to disclose fact to plaintiff, (3) the defendant's misstatement or omission was material, (4) plaintiff relied on defendant's material misstatement or omission, and (5) plaintiff

suffered damages as a result of defendant's material misstatement or omission.

*Specialty Beverages*, 537 F.3d at 1180-81.

In the alternative to their actual-fraud theory, plaintiffs assert that, even absent an intent to deceive, Hench's and Rupp breached duties owed to retail purchasers by mischaracterizing the scope of the warranty and failing to disclose the true limitations of Jessup's coverage, thereby securing an unfair advantage through plaintiffs' misunderstanding. They point to evidence that Hench's and Rupp undertook to speak regarding warranty coverage and financing terms, supplied the generic Sheet that did not conform to Jessup's actual warranty, failed to provide or explain Jessup's written warranty before the sale, and omitted any mention of a substantial origination fee despite maintaining a close, ongoing relationship with 21st Mortgage. *See* [Dkt. 210 at 28-31].

Under Oklahoma law, a party that chooses to speak on a subject material to the transaction assumes a duty not to mislead by partial disclosure or by omitting qualifying information, and breach of that duty may give rise to constructive fraud. *See Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 16, 475 P.3d 847, 855. Viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could find that Hench's and Rupp owed a duty of full and fair disclosure concerning warranty coverage and financing terms, that their statements and omissions created a materially misleading impression, that plaintiffs relied on those impressions in entering the transaction, and that plaintiffs incurred damages as a result. Summary judgment on plaintiffs' constructive-fraud theory is therefore unwarranted.

### D.    BREACH OF CONTRACT | COUNT II

To prevail on their breach of contract claims against Hench's and Rupp, plaintiffs must show (1) formation of a contract, (2) breach of that contract, and (3) damages proximately resulting from the breach. *See Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. The existence of a contract in this case is undisputed; the parties instead contest the scope of Hench's contractual duties and whether the record contains evidence of breach and resulting damages.

As a threshold matter, defendants argue that Rupp was not a contracting party and signed the purchase agreement solely in his capacity as a salesperson for Hench's, such that he cannot be held personally liable for any alleged breach. The Court agrees. Under Oklahoma agency principles, when an agent contracts on behalf of a fully disclosed principal and the contract facially reflects that the agent is acting in a representative capacity, the principal—not the agent—is bound, absent a clear indication that the agent intended to assume personal contractual liability. *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 16 & n.21, 826 P.2d 603, 609 (*quoting* Restatement (Second) of Agency § 320). The sales contract here identifies Hench's as the seller, denotes Rupp's role as a salesperson, and contains no language suggesting that Rupp undertook personal contractual obligations. Accordingly, Rupp is entitled to summary judgment on Count II.

Hench's further contends that its contractual duties were limited and that it fully performed those obligations as a matter of law. Viewing the evidence in the light most favorable to plaintiffs, however, the Court concludes there is a genuine dispute

23

of material fact as to whether Hench's performance of its obligation to "deliver, block, level, and tie down to state code one time only" was deficient. Plaintiffs have adduced evidence that the home may have been supported by loose or non-contacting piers and that subsequent modifications by Hench's to the home's structural components allegedly worsened floor and frame deflections. On this record, a reasonable jury could find that Hench's failed to perform its contractual duties in a workmanlike, code-compliant manner and that plaintiffs suffered damages as a result. Hench's is therefore not entitled to summary judgment on Count II.

### E.    BREACH OF WARRANTY | COUNT III

Under Oklahoma law, a breach of warranty claim requires proof of (1) the existence of a warranty, (2) a breach of that warranty, and (3) damages proximately caused by the breach. *See Collins Radio Co. of Dallas, Tex. v. Bell*, 1980 OK CIV APP 57, ¶ 29, 623 P.2d 1039, 1052. As noted, Hench's maintains that no warranty ever existed between it and plaintiffs. Viewing the evidence in the light most favorable to plaintiffs, however, the Court concludes that a genuine dispute of material fact exists as to whether Hench's issued, and subsequently breached, an express one-year warranty that became part of the parties' overall agreement. In particular, the sales contract's acknowledgment of a "separate written warranty," the terms reflected in the Sheet, and Hench's later communications and conduct in responding to plaintiffs' service requests could support a finding that such a warranty was both extended and violated. Accordingly, Hench's is not entitled to summary judgment on Count III.

## F.    VIOLATIONS OF THE OCPA | COUNT V

"The OCPA was enacted to protect consumers from unfair and deceptive trade practices and," to that end, "provides a private right of action for aggrieved consumers." *Williams v. CSC Credit Servs., Inc.*, No. CIV-07-255-CVE-FHM, 2007 WL 1959219 at *1 (N.D. Okla. June 29, 2007) (*citing Patterson v. Beall*, 2000 OK 92, ¶ 30, 19 P.3d 839, 846). To prevail under the OCPA, a plaintiff must establish:

> (1) that the defendant engaged in an unlawful practice as defined by 15 O.S. § 753; (2) that the challenged practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

*Patterson*, ¶ 30, 19 P.3d at 846. The first step in the analysis is to identify which provisions of § 753 plaintiffs invoke. Although Count V is pled against Crown, Stubbs, Hench's and Rupp,[13] the Amended Complaint expressly alleges that "Hench's and Rupp" engaged in a series of unfair and deceptive practices under § 753, and more generally alleges that "Defendants" failed to resolve who was responsible for damaging the home and failed to disclose that damage to plaintiffs. [Dkt. 56, ¶¶ 99, 99(i)-(vi), (viii)-(ix)]. In their summary judgment briefing, plaintiffs clarify that they proceed against Crown and Stubbs under §§ 753(7) and (21).

Section 753(7) makes it unlawful in the course of business to represent knowingly, or with reason to know, that the subject of a consumer transaction is

---

[13] Although Hench's and Rupp challenge Count V in their reply brief, they raise no such arguments in their motion for summary judgment. The Court declines to consider arguments raised for the first time in a reply because doing so would deprive plaintiffs of a fair opportunity to respond. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

original or new when it is in fact reconditioned, reclaimed, used, or secondhand. 15 O.S. § 753(7). Section 753(21) makes it unlawful in the course of business to commit an "unfair or deceptive trade practice as defined in Section 752 of this title." 15 O.S. § 753(21). Plaintiffs rely on § 752(13), which defines "deceptive trade practice" as a misrepresentation, omission, or other practice that has deceived or could reasonably be expected to deceive or mislead a person to that person's detriment. 15 O.S. § 752(13). Read together, these provisions require, at minimum, a qualifying representation or omission by the defendant in connection with a "consumer transaction" as defined in § 752(2).

Here, plaintiffs concede that Crown and Stubbs did not advertise, offer, sell, or contract with them for the home and that plaintiffs did not pay either defendant to deliver or install the same. Plaintiffs likewise identify no direct representation by Crown or Stubbs regarding the home's age, condition, or characteristics that induced them into any consumer transaction with these defendants. Instead, plaintiffs attempt to bring Crown and Stubbs within the OCPA by analogy to *Robinson v. Sunshine Homes, Inc.*, 2012 OK CIV APP, 291 P.3d 628, and by characterizing the alleged failure to identify or disclose transit and installation damage as a "deceptive omission." *Robinson*, however, involved damages at the manufacturer-delivery stage within a broader sales relationship and, after discovery, the plaintiff dismissed her claim against the delivery/installation company. *Id.*, ¶ 10 & n.3, 291 P.3d at 632. Even assuming that a transporter or installer could, in some circumstances, owe disclosure duties cognizable under the OCPA, plaintiffs have not produced evidence that Crown

26

or Stubbs knew of specific damage and concealed it from them, or that any such nondisclosure—as opposed to design or manufacturing defects—proximately caused their claimed economic loss.[14]

Accordingly, plaintiffs have not created a genuine dispute of material fact that Crown or Stubbs engaged in an "unlawful practice" directed to them in the context of a "consumer transaction," or that any conduct by these defendants in their limited subcontractor roles caused plaintiffs compensable injury under the OCPA. On this record, no reasonable jury could find the essential elements of an OCPA claim satisfied. Crown and Stubbs are therefore entitled to summary judgment on plaintiffs' OCPA claims.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED that the motion for summary judgment filed by Crown Contracting, LLC [Dkt. 161] is hereby **GRANTED in part** and **DENIED in part**.

IT IS FURTHER ORDERED that the motion for summary judgment filed by Stephen Stubbs [Dkt. 171] is hereby **GRANTED**.

IT IS FURTHER ORDERED that the motion for summary judgment filed by Hench's and Rupp [Dkt. 200] is hereby **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of each operative claim and crossclaim in this action is as follows:

---

[14] Plaintiffs alternatively assert that they cannot fully address defendants' challenges to Count V without additional discovery. The Court finds that, even with further development of the record, plaintiffs still would be unable to identify a qualifying representation or omission by Crown or Stubbs made in connection with a "consumer transaction."

27

•      Count I, alleging fraud and deceit against Hench's and Rupp remains pending. Count I, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Count II, alleging breach of contract against Hench's, remains pending. Count II, as asserted against Rupp, is dismissed pursuant to Fed. R. Civ. P. 56. Count II, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Count III, insofar as it alleges breach of implied warranty of fitness for a particular purpose against Hench's and Jessup, is dismissed in accordance with the Court's prior Orders. [Dkts. 196, 245]. Count III, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Count IV, as asserted against Stubbs, is dismissed pursuant to Fed. R. Civ 56. Count IV, as asserted against Crown, Hench's and Jessup, remains pending. Count IV, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Count V, alleging violations of the OCPA against Crown and Stubbs, is dismissed pursuant to Fed. R. Civ. P. 56. Count V, as asserted against Jessup, is dismissed in accordance with the Court's prior Order. [Dkt. 196]. Count V, as asserted against Hench's and Rupp, remains pending. Count V, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Count VI, alleging unjust enrichment against Hench's, Rupp, Jessup and 21st Mortgage, is dismissed in accordance with the Court's prior Orders. [Dkts. 166, 196, 245].

•      Count VII, alleging violations of the Magnuson Moss Act against Hench's and Jessup, remains pending. Count VII, as asserted against 21st Mortgage, remains bifurcated pursuant to the Court's prior Order. [Dkt. 247].

•      Crown's crossclaim against Stubbs for negligence and conditional indemnity remains pending.

•      21st Mortgage's crossclaims against Hench's for contractual indemnity, implied indemnity, and breach of contract remain bifurcated pursuant to the Court's prior Order. [Dkt. 247].

IT IS SO ORDERED this 23rd day of March, 2026.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE